330    APPELLATE COURTS OF ILLINOIS.

Scalzo et al. v. Commercial Trust & Savings Bank, 239 Ill. App. 330.

**Felix Scalzo et al., Plaintiffs in Error, v. Commercial Trust & Savings Bank et al., Defendants in Error.**

## Gen. No. 7,910.

1. CORPORATIONS—*jurisdiction of equity to appoint receivers and wind up affairs.* Courts of chancery have no equity powers to appoint receivers and close up the affairs of a corporation.

2. BANKING—*public interest in banking business.* The subject of banking, under the law of this State, is impressed with a public interest and trust which seeks to protect, not only the depositor and creditor, but the stockholder and general public.

3. BANKING—*jurisdiction of equity to appoint receivers and supervise affairs.* The power of a court of equity to appoint receivers and to supervise the affairs of banks is to be found in Cahill's St. ch. 16a, and section 54 of the General Corporation Act, Cahill's St. ch. 32, ¶ 54, does not apply.

4. CORPORATIONS—*prerequisites to suit by stockholder upon cause of action primarily belonging to corporation.* Before a stockholder should be permitted to bring suit, in his own name, to institute and conduct litigation which usually belongs to the corporation, he should show to the satisfaction of the court that he has exhausted all of the means within his reach to obtain within the corporation itself the redress of his grievances or action in conformity to his wishes.

5. BANKING—*sufficiency of bill by stockholders seeking receiver for bank and injunction restraining acts of liquidators.* A bill by minority stockholders seeking appointment of a receiver for the bank and an injunction restraining officers thereof, acting as a

Scalzo et al. v. Commercial Trust & Savings Bank, 239 Ill. App. 330.

liquidating committee, from enforcing against complainants certain obligations to the bank, was properly dismissed for want of equity, where there was no allegation of application to and refusal by the auditor of public accounts to proceed against the bank as provided by Cahill's St. ch. 16a, ¶ 11, nor allegations sufficient to show that the stockholders were in danger of suffering injury through fraudulent acts on the part of the said officers.

Error by plaintiffs to the Circuit Court of Sangamon county; the Hon. FRANK W. BURTON, Judge, presiding. Heard in this court at the October term, 1925. Affirmed. Opinion filed December 31, 1925.

A. M. FITZGERALD, O. J. PUTTING, EDWARD PREE, T. J. SULLIVAN and H. C. MOORE, for plaintiffs in error.

GRAHAM & GRAHAM, SIDNEY S. BREESE and BARBER & BARBER, for defendants in error.

MR. JUSTICE SHURTLEFF delivered the opinion of the court.

This is a writ of error to review a decree of the circuit court of Sangamon county, sustaining general demurrers to an original bill and two amended bills filed by plaintiffs in error, minority stockholders seeking the appointment of a receiver for the defendant in error bank, and an injunction to restrain the individual defendants in error, officers, from enforcing obligations in favor of the bank. We shall speak of the plaintiffs in error as complainants and the defendants in error as defendants.

The relevant facts as alleged by the original and amended bills are: That defendant Commercial Trust and Savings Bank was organized under the laws of Illinois July 14, 1920, with a capital of $500,000, consisting of 5,000 shares and with a surplus of $250,000. On May 2, 1924, it ceased its deposit business, and its directors and officers pledged its assets to five trustees, Latham T. Souther, George E. Keys, Joseph F. Bunn, Henry G. Bengel and C. J. Peterson, Jr., representing

the five clearing house banks of Springfield (First National Bank, First State Trust and Savings Bank, Ridgely-Farmers State Bank, Springfield Marine Bank and Illinois National Bank), to secure the payment to said clearing house banks of the sum of approximately $1,400,000 advanced by said clearing house banks to pay the debts and deposit liabilities of defendant bank, and thereupon the bank ceased receiving deposits and making loans.

The stockholders of the bank held a special meeting, which meeting was also attended by its directors and officers, and passed and adopted resolutions that the bank be placed in voluntary liquidation; that its deposit business be discontinued, its assets be converted into money, its obligations discharged, and the net residue thereof be distributed pro rata among its stockholders, also ratifying and approving said contract made by the directors and officers with said trustees for said clearing house banks and appointing defendants in error F. E. Shuster, L. A. Danner and George W. Solomon as a liquidation committee to conduct the liquidation of the bank, and appointing "a long list of members of the Advisory Committee to assist and advise with said liquidation committee."

It is also alleged that all sums advanced by the clearing house banks, and all debts of the bank, have been paid and there remains in the hands of the liquidation committee as a fund for the benefit of stockholders of the bank, assets of the face value of over $700,000; that the liquidation committee "is forcing certain firms and individuals that are indebted to said Commercial Trust and Savings Bank to assign their property to said liquidation committee"; that "defendants hold 320 shares, comprising the controlling interest in the Lincoln Park Coal and Brick Company, as collateral to the paper of complainant James A. Hall, and have given notice that they would sell said 320 shares at public or private sale at the south door of the county court house

in Springfield, Illinois, on February 19, 1925, and defendants have conspired to purchase said stock at a very low figure, approximately $1,600 whereas in fact said stock has a market value of $32,000 to the damage of the stockholders of $30,400, and that unless restrained by the court, defendants will continue to force down prices of this collateral and other collaterals so that it can be purchased for their own private gain and benefit, at the expense of the stockholders of said bank."

There are also allegations claiming that $2,500 was lost to the bank by not selling the lease of its banking house location; that $350 per month was wasted in employing too many clerks, and that $5,500 was lost by selling for $2,500 property obtained as collateral from a debtor.

One of the issues involved in this bill is whether a court of equity, at the suit of a small minority of the stockholders who have sought no redress in the corporation, will interfere, by injunction or receiver, with the settlement of the affairs of a bank where the stockholders have voted to go into voluntary liquidation and wind up its business and with its directors have placed its affairs in the hands of a liquidation committee made up of three of its directors who are proceeding to convert its assets into cash and distribute the same among its stockholders.

There is a further issue as to whether certain allegations in the bill are sufficient to charge fraud and gross mismanagement of the affairs of the bank to the extent that a court of equity will intervene and assume jurisdiction. The court below sustained a demurrer to the bill and a decree was entered on the pleadings dismissing the bill for want of equity, and the complainants have brought the record to this court, by writ of error, for review. In equity, amended bills are construed as a continuation of the original bill, and with it constitute a single record. (*Beck-*

*er v. Billings,* 304 Ill. 202 [23 N. C. C. A. 105].) From the bill we glean that some of the complainants are indebted to the bank and are unable to meet their indebtedness. Complainants contend that there has been no voluntary dissolution of the defendant banking corporation, either under the Banking Act or the General Corporation Act, but that the bank, by reason of ceasing to take deposits and make loans and by not electing a board of directors in January, 1925, has abandoned its charter powers, ceased to function as a bank and placed its property illegally in the hands of three trustees who hold the assets of the bank as a trust, and complainants contend under section 54 of the General Corporation Act [Cahill's St. ch. 32, ¶ 54] providing: "Courts of equity shall have full power, on good cause shown, to dissolve or close up the business of any corporation, to appoint a receiver therefor who shall have authority, by the name of the receiver of such corporation to sue in all courts and do all things necessary to closing up its affairs, as commanded by the decree of such court"; that a receiver should be appointed and an injunction issue. It cannot be said that the bank has ceased to function or is without a governing body because the stockholders did not elect a new board of directors in January, 1925. It is provided in section 4 of the Banking Act [Cahill's St. ch. 16a, ¶ 4]: "Any omission to elect directors shall not impair any of the rights and privileges of the association or of any person in any way interested, but the existing directors shall hold office until their successors are elected and qualified, as in such cases may be by law provided," so that the bank continues to have the legal agency by which it is authorized and is presumed to be doing business. The bill does not aver whether the defendants Shuster, Danner and Solomon, constituting the liquidation committee, are members of the board of directors or not, and as the bill must be taken most strongly

against the pleader, courts must presume that the named defendants are members of the board of directors of defendant bank, if such membership in any manner is requisite for service upon a liquidation committee for the bank. As to a voluntary dissolution of the banking corporation, section 15 of the Banking Act [Cahill's St. ch. 16a, ¶ 15] provides that the corporation *"may determine its affairs, distribute its assets among its stockholders, resign its charter or certificate of incorporation* and close up its business by resolution passed at a meeting of its stockholders called for that purpose." The statute says this may be done "on depositing with the auditor an amount of money equal to the whole amount of debts and demands against it," etc. Under this statute, the banking corporation has full power to wind up its affairs and distribute its assets among its stockholders when its depositors and creditors are paid, or the fund with which to pay the liabilities is deposited with the auditor. No question arises in this case as to the legality of the arrangement with the trustees for the clearing house banks as the depositors were paid in full and, without doubt, with the full approval of the auditor, and the remaining assets were in the hands of the liquidation committee prior to the filing of the bill of complaint in this case.

From the allegations in the bill it is apparent that the defendant bank, on the 17th of July, 1924, by its stockholders, by resolution, took the proper, necessary and sufficient action to discontinue the banking business and wind up its affairs, and thereafter it had two years, at least, to complete its dissolution. (*Commercial Loan & Trust Co. v. Mallers,* 242 Ill. 54.)

It is provided in section 11 of the Banking Act [Cahill's St. ch. 16a, ¶ 11] that:

"No bill shall be filed or proceedings commenced in any court for the dissolution or for the winding up of the affairs or for the appointment of a receiver for

any such banking corporation on the grounds of insolvency or impairment of the capital stock of such banking corporation, or upon the ground that such bank is being conducted in an illegal, fraudulent or unsafe manner, except in the name and by the authority of the Auditor of Public Accounts, represented by the Attorney General.''

It is contended by the complainants that this provision of the Act, construing the language used in connection with the language in section 15 of the Act, is intended for the safety and protection of the depositors and creditors of the bank only, and that when the depositors are paid and all liabilities cancelled, the banking corporation becomes the same as any general corporation, and the provisions of section 54 of the General Corporation Act, before recited, apply, and that the complainants are entitled, in equity, to relief in this case.

Certain provisions of the General Corporation Act apply to banks where there is no specific statutory enactment in the Banking Act. (*Commercial Loan & Trust Co. v. Mallers, supra; Wilson v. Mackinaw State Bank*, 217 Ill. App. 494.) Courts of chancery have no general equity powers to appoint receivers and close up the affairs of corporations. It is held in *Coquard v. National Linseed Oil Co.*, 171 Ill. 485: "Courts of chancery have no general power to appoint receivers of corporations and can only appoint them where expressly authorized by the statute. In the absence of statutory authority they have no jurisdiction to decree the dissolution of a corporation by decreeing a forfeiture of its franchise. (*Wheeler v. Pullman Iron & Steel Co.*, 143 Ill. 197; *Chicago Steel Works v. Illinois Steel Co.*, 153 Ill. 9; *People v. Weigley*, 155 Ill. 491.) The whole power of a court of equity in such cases is derived from section 25, chapter 32, of the Revised Statutes. Complainant did not bring himself within any provision of that sec-

tion, and is not entitled to the appointment of a receiver or dissolution of the corporation." And the same rule is laid down in *Blanchard Bro. & Lane v. Gay Co.,* 289 Ill. 420; *Hunt v. LeGrand Roller Skating Rink Co.,* 143 Ill. 121; *Abbott v. Loving,* 303 Ill. 167, and other cases. Section 25 of the General Corporation Act referred to is now section 54 of the Revised Act [Cahill's St. ch. 32, ¶ 54]. In *Blanchard Bro. & Lane v. Gay Co., supra,* the court said on page 421: "Appointing a receiver to take possession of the assets of a corporation and distribute them is tantamount to dissolving the corporation by decree in equity," and again the court said in the same case: "Courts are particularly disinclined to appoint a receiver for misconduct or mismanagement of a corporation or for the purpose of merely preserving its assets where the application is made by stockholders, for the reason that the sovereign does not furnish public agencies for the carrying on of private enterprises."

In this particular, pointed out by the court, the legislature has made a broad distinction between general corporations engaged in private enterprise and banking corporations. As to banks, the State has provided an executive branch of the State government to license, inspect, supervise and regulate State banks and under section 11 of the Banking Act, if upon an examination of the affairs of the bank it appears to the auditor that its business is being conducted in an illegal manner, he may appoint a receiver to take charge of the affairs of the bank without the order of any court and wind up its affairs, obtaining orders of court for certain specific purposes, and this the auditor is empowered to do, either before or after the payment to the depositors, according to the letter of the statute. The subject of banking, under the law of this State, is impressed with a public interest and trust which seeks to protect, not only the depositor and

creditor, but the stockholder and general public. In the opinion of this court, the power of a court of chancery to appoint receivers and supervise the affairs of banks is to be found in the statutory law adopted by the people in chapter 16½ of the Revised Statutes [Cahill's St. ch. 16a], and section 54 of the General Corporation Act [Cahill's St. ch. 32, ¶ 54] does not apply to banks. Before a stockholder should be permitted to bring suit, in his own name, to institute and conduct a litigation which usually belongs to the corporation, he should show to the satisfaction of the court that he has exhausted all of the means within his reach to obtain within the corporation itself the redress of his grievances or action in conformity to his wishes. (*Hawes v. Contra Costa Water Co.*, 104 U. S. 450 [26 L. Ed. 832]; *Babcock v. Farwell*, 245 Ill. 46; *Continental Securities Co. v. Belmont*, 206 N. Y. 7, 51 L. R. A. [N. S.] 112; *Fleming v. Black Warrior Copper Co.*, 15 Ariz. 1, 51 L. R. A. [N. S.] 99.) Nothing is shown by the bill that any complaint has ever been made to the auditor of State by any of the complainants; neither is the auditor of State made a party to the bill.

Regardless of all that has been said, cases may arise in which such a fraudulent condition of affairs may be charged to exist, and the auditor of State refuse to take action so that a court of equity should take jurisdiction on the ground of fraud. Complainants in part have attempted to invoke the jurisdiction of the court on the ground of fraud. It is charged in the bill that the liquidating committee refused to dispose of a lease of the bank building to the damage of the bank in the sum of $2,400. No facts are stated as to whether or not the lease was assignable or whether it was necessary to hold the lease to dispose of the bank fixtures or for other reasons. It is charged that the committee paid out $350 per month for clerk hire which was not necessary, when the board of trustees at the same time was paying the First State Trust and Savings Bank

$500 per month for all clerical work in liquidating the defendant bank to the loss of the stockholders of $2,100, but the bill does not aver that these clerks performed no services or any other facts from which the court may determine the necessity of their employment.

It is further averred that the defendants' liquidating committee in a contract set a price of $5 per share on the stock of the Lincoln Coal and Brick Company; that the defendant bank held 320 shares of the stock of said company as collateral to loans made by complainant Hall from the said bank; that the par and actual value of said stock was one $100 per share and that the defendants wrongfully conspired together to obtain these 320 shares of stock for the lowest figure possible from the defendant bank, to the damage of the stockholders in the sum of $30,400. The bill does not state the amount that complainant Hall owes the bank, or whether he is insolvent. It does not state whether Hall has paid the bank or whether the bank holds other security. It does appear that the defendants have advertised the stock for sale at a public sale. There are one or two charges of a similar nature, none of which, however, aver facts with sufficient certainty, so that the court can see that the stockholders of the bank are in danger of suffering injury. None of the complainants have suggested any of these matters to the auditor of State. Defendant bank was organized with a capital of $750,000. Sufficient assets have been converted into cash to pay the depositors and creditors in an amount of about $1,400,000. There are on hand assets and securities to the amount of about $770,000 in course of liquidation to be distributed to the stockholders, with which, from the allegations in this bill, a court of equity has no occasion or jurisdiction to interfere.

The circuit court of Sangamon county did not err in sustaining the demurrer to and dismissing the bill for want of equity, and the decree of that court is affirmed.

*Affirmed.*