Ida Goldberg, Appellant, v. Amos Ball et al., Appellees.

Gen. No. 40,913.

Heard in the third division of this court for the first district at the October term, 1939. Opinion filed May 22, 1940.

MAYER, ALTHEIMER & KABAKER and SEYMOUR GOLDBERG, all of Chicago, for appellant; ALAN J. ALTHEIMER and LESTER E. SLOSBURG, of Chicago, A. LINCOLN LAVINE, A. L. POMERANTZ and LEONARD I. SCHREIBER, of counsel.

HOPKINS, SUTTER, HALLS & DEWOLFE, of Chicago, for certain appellees; ALBERT L. HOPKINS, DONALD J. DEWOLFE and T. EUGENE FOSTER, all of Chicago, of counsel.

ASHCRAFT & ASHCRAFT, of Chicago, for certain other appellee; RAYMOND M. ASHCRAFT and NORMAN L. OLSON, of counsel.

STUART S. BALL, of Chicago, for certain other appellee.

MR. PRESIDING JUSTICE DENIS E. SULLIVAN delivered the opinion of the court.

Plaintiff Ida Goldberg brings this appeal from a decree entered in the circuit court of Cook county on March 14, 1939, dismissing the bill of complaint which she had filed against the Standard Oil Company of Indiana, a corporation, its directors and the executrix and administrator of the estates of those defendants who have died.

The action was a stockholders' derivative action brought in and for the benefit of the said Standard

Oil Company, to compel the director defendants to account for secret profits fraudulently made by them at the expense of the Standard Oil Company.

The original complaint was filed on November 16, 1937 to which Standard Oil Company filed its answer. The individual defendants, Edward J. Bullock, Robert H. McElroy, Robert W. Stewart, Edward G. Seubert and Amos Ball filed motions to dismiss. Thereafter, on January 20, 1938, the original complaint was ordered stricken and plaintiff was given 15 days within which to file an amended complaint. Thereafter an amended complaint was filed to which Standard Oil Company filed its answer and to which the same individual defendants filed motions to strike.

The amended complaint was dismissed on October 24, 1938, and leave was granted to plaintiff to file a second amended complaint within 20 days. Thereafter plaintiff amended her second and supplemental complaint and again the Standard Oil Company filed its answer and the individual defendants filed motions to dismiss. A decree of dismissal was entered on March 14, 1939.

From the complaint it appears that the plaintiff is the holder of 100 shares of Standard Oil Company (Indiana) stock which she acquired in July, 1936; that she seeks redress of alleged wrongful actions of certain of the directors of said corporation committed in the years 1925 and 1927; that she sued on behalf of herself and all other stockholders "who may be entitled to participate in this litigation."

It appears that no other stockholders joined in this litigation.

Plaintiff's theory of the case is that the individual defendants who comprised the entire board of directors of Standard Oil Company in the year 1925 and a majority of said board in 1927, in breach of their fiduciary duties and obligations, conspired to and did secretly and personally profit in the sum of $1,266,750, at the expense of their company, the defendant Stand-

ard Oil Company (Indiana); that said director defendants purchased in 1925, for their own account, common stock of Pan American Eastern Petroleum Corporation instead of permitting Standard Oil Company (Indiana) to purchase said stock and thereafter, in 1927, secretly, by means of a dummy corporation sold said stock to Standard Oil Company (Indiana) at the profit aforementioned; that plaintiff individually and as a stockholder of Standard Oil Company (Indiana), on her own behalf and on behalf of all other stockholders similarly situated, has brought this action to enforce an accounting by the director defendants to Standard Oil Company (Indiana) for the purpose of restoring to the corporation the illicit profits thus secured by the director defendants.

The theory of the defendants to sustain the judgment of dismissal entered by the circuit court sets forth their propositions relative thereto, as follows:

"1. The complaint shows that plaintiff brought suit in a derivative right without compliance with the conditions precedent imposed by equity on such suits.

"2. Plaintiff was not excused from making demand on the directors or the stockholders of the corporation to bring such action in the name and right of the corporation.

"3. The alleged cause of action arose not later than September, 1927, and was barred by the statute of limitations of the State of Illinois.

"4. The alleged cause of action was barred by laches and acquiescence.

"5. Plaintiff did not acquire her stock until July, 1936, and was not a stockholder at the time the transactions complained of are alleged to have occurred.

"6. Plaintiff's predecessor or predecessors in title ratified and approved the various transactions complained of.

"7. The alleged wrongs charged against the defend-

ants were approved and authorized by the stockholders of the corporation at a special meeting held in September, 1927, more than ten years before the institution of the suit.

"8. The complaint fails to show that the plaintiff or her predecessor or predecessors in title exercised any diligence either in protecting their rights against the alleged wrongs complained of or in discovering same.

"9. The complaint fails to disclose that there was any concealment of the alleged cause of action.

"10. The material allegations of the alleged wrongs and frauds are made only upon information and belief, and not positively, as required by law.

"11. Other material allegations of the complaint are made by way of innuendo and as conclusions of the pleader, and in this regard the complaint is wholly insufficient.

"12. The complaint erroneously assumes that a single stockholder of a corporation may sue to disaffirm and set aside a transaction made by the corporation within its corporate powers upon authority granted by a majority vote of the stockholders.

"13. The complaint fails to disclose that the corporation is in a position, after a lapse of more than ten years, to disaffirm the purchase of the Pan Eastern shares from Panamex Company.

"14. A former suit, charging substantially the same alleged wrongs, was brought by another stockholder on behalf of himself and all other stockholders in the Federal Court in 1933 and dismissed for want of prosecution in 1936.

"15. The complaint was properly dismissed for want of equity on each and every ground set forth in these defendants' motions to dismiss."

As to whether or not a suit of this kind can be maintained, we think the rule in this State is as stated in vol. 3, sec. 884, Fletcher Cyclopedia Corporations:

" 'A director is a trustee for the entire body of stock-

holders, and both good morals and good law imperatively demand he shall manage all the business affairs of the company with a view to promote, not his own interests, but the common interests, and he cannot directly or indirectly derive any personal profit or advantage by reason of his position, distinct from his coshareholders.' "

In *Dixmoor Golf Club, Inc. v. Evans*, 325 Ill. 612, at p. 616, the court said: "The directors of a corporation are trustees of its business and property for the collective body of stockholders in respect to such business. They are subject to the general rule in regard to trusts and trustees, that they cannot, in their dealings with the business or property of the trust, use their relation to it for their own personal gain. It is their duty to administer the corporate affairs for the common benefit of all the stockholders and exercise their best care, skill and judgment in the management of the corporate business solely in the interest of the corporation."

One of the first prerequisites necessary in order to maintain a suit of this kind is that a demand for relief be made within the corporation. And, as was said in the case of *Babcock v. Farwell*, 245 Ill. 14, at p. 46: "The stockholders cannot ordinarily maintain a suit to enforce any right of the corporation. That privilege belongs to the corporation itself, acting through its directors. The mere failure of the directors to bring suit does not entitle any stockholder to do so. A demand upon the directors to bring the suit is, in general, essential before a stockholder may himself maintain a bill. His remedy must first be sought within the corporation, and it is only where the majority of the directors are themselves involved in the matters complained of, so that it is evident that the demand would be unavailing, that it can be dispensed with." This being the law, in order to maintain a suit, it would be necessary to allege and prove that such a demand had been made on a board of directors to commence such suit or that

such action in all probability would be futile because the board, or at least a majority of the directors, are hostile, or had participated in the alleged fraud and they could not be expected to commence a suit against themselves in the name of the corporation.

The allegations of the second amended and supplemental bill regarding a demand, show that no such demand was made and, as an excuse for failure to make a demand on the directors, plaintiff sets forth the following:

"(a) The entire board of directors of Standard Oil, except for J. F. Stone who was elected a director in 1937, is composed of persons who participated in the acts of malfeasance and nonfeasance hereinbefore alleged."

The foregoing paragraph makes no reference to the so-called fraud on the part of the board.

The second amended and supplemental bill further states:

"(b) All the directors of Standard Oil who did not directly participate in the profits hereinbefore alleged, were under the control and domination of the profiting directors. Upon information and belief, the refusal of the non-profiting directors to assert the corporate cause of action hereinbefore alleged, was and is due to fraud, bad faith and misconduct amounting to a breach of trust and was induced by their personal acquaintance, friendship and social and business relations with the defendant directors."

The foregoing statement or charge made by plaintiff against these so-called "nonprofiting" directors leaves much to the imagination.

Several years before the present suit was filed in the circuit court, a somewhat similar suit was commenced in the United States District Court of this district by one Wilhelmi and others, with relation to the subject-matter of this suit. After such suit had been pending in said court for sometime it was dismissed without a

hearing. The suit which was commenced in the Federal Court, apparently is the basis for the charge made in the complaint that the present board of directors of Standard Oil had express notice and information concerning the transgression of directorial duties. Plaintiff then substitutes this argument for an allegation of fact. Plaintiff alleges that the present board of directors obtained at least as much notice from the institution of such suit as they would have obtained from a formal demand having been made by plaintiff. Such statements do not comport with the requirements that the claim should state facts and not argumentative conclusions. And, if the allegations of fraud are upon information and belief, they cannot be sustained unless the facts upon which the belief is founded is set forth in the pleadings.

In *Murphy v. Murphy*, 189 Ill. 360, the Supreme Court in sustaining a general demurrer to the complainant's bill, at p. 366, said: " . . . the allegation of fraud, as made in the present bill, is made upon information and belief; and 'an allegation of fraud upon information and belief can not be sustained, unless the facts, upon which the belief is founded, are stated in the pleadings.' . . . 'A mere statement that the plaintiff is informed, or is informed and believes, puts in issue only his information and belief, and not the truth or falsity of the facts thus referred to.' "

It is conceded that no demand has been made upon the board to take any steps to recover the money of which it is charged the company has been defrauded, and it further appears that at the time this suit was commenced there were only four out of the twelve members of the board of directors who were on the board at the time the alleged wrongful acts were committed. This, it seems to us would make it even more necessary that a demand be made, as it cannot be presumed that the subsequent members of the board of directors, even when rather inartificially charged with

wrong doing, would refuse to protect the rights of the corporation.

In Pomeroy's Equity Jurisprudence, 4th Ed. sec. 1095, it was said: "The stockholder does not bring such a suit because *his* rights have been *directly* violated, or because the cause of action is *his,* or because *he* is entitled to the relief sought; he is permitted to sue in this manner *simply in order to set in motion the judicial machinery of the court.* The stockholder, either individually or as the representative of the class, may commence the suit, and may prosecute it to judgment; but in every other respect the action is the ordinary one brought by the corporation, it is maintained directly for the benefit of the corporation, and the final relief, when obtained, belongs to the corporation, and not to the stockholder-plaintiff. The corporation is, therefore, an indispensably *necessary* party, not simply on the general principles of equity pleading in order that it may be bound by the decree, but in order that the relief, when granted, may be awarded to it, as a party to the record, by the decree."

The bill here does not allege that any effort was made by the plaintiff to comply with such requirement by making a demand that the corporation proceed to protect the rights of all the stockholders. As was said in 14 Corpus Juris, p. 931: "The effort on the part of the stockholder to procure corporate action must be earnest and bona fide, and not merely simulated. The stockholder must show either that a demand upon the board of director or other managing body, to have an action brought and prosecuted in the name of the corporation to redress the grievances complained of, has been made and refused, or that the circumstances are such that such a demand would be futile and unavailing."

And continuing, it is stated:

"A stockholder cannot rest upon a refusal of the directors to sue, but, if time permits, he must make an honest effort to obtain action by the stockholders as a

body, or, if he does not make such an appeal, he must show that the effort would be useless." No such position has been maintained by the plaintiff in this case, but on the contrary it is stated that such a demand would be refused because some of the directors who were not among the "profit making ones" and were in the majority, refused to do anything because of their acquaintance or friendship with the offending directors. We do not think this is sufficient to excuse the plaintiff from following the law which requires that a demand be made in good faith. Directors who are elected by stockholders and placed in control of a corporation are not to be superseded by a stockholder without a strong showing having been made that the directors are mismanaging the corporation and are dishonest.

In *Corbus v. Alaska Treadwell Gold Mining Co.*, 187 U. S. 455, Mr. Justice BREWER, speaking for the court, in his opinion at p. 463, said: "The directors represent all the stockholders and are presumed to act honestly and according to their best judgment for the interests of all. Their judgment as to any matter lawfully confided to their discretion may not lightly be challenged by any stockholder or at his instance submitted for review to a court of equity. The directors may sometimes properly waive a legal right vested in the corporation in the belief that its best interests will be promoted by not insisting on such right. They may regard the expense of enforcing the right or the furtherance of the general business of the corporation in determining whether to waive or insist upon the right. And a court of equity may not be called upon at the appeal of any single stockholder to compel the directors or the corporation to enforce every right which it may possess, irrespective of other considerations. It is not a trifling thing for a stockholder to attempt to coerce the directors of a corporation to an act which their judgment does not approve, or to substitute his judgment for theirs."

And, on the same subject, the Supreme Court in the case of *Babcock v. Farwell*, 245 Ill. 14, at p. 46, said: "The stockholders cannot ordinarily maintain a suit to enforce any right of the corporation. That privilege belongs to the corporation itself, acting through its directors. The mere failure of the directors to bring suit does not entitle any stockholder to do so. A demand upon the directors to bring the suit is, in general, essential before a stockholder may himself maintain a bill. His remedy must first be sought within the corporation, and it is only where the majority of the directors are themselves involved in the matters complained of, so that it is evident that the demand would be unavailing, that it can be dispensed with."

In *Scalzo v. Commercial Trust & Savings Bank*, 239 Ill. App. 330, this court at p. 338, said: "Before a stockholder should be permitted to bring suit, in his own name, to institute and conduct a litigation which usually belongs to the corporation, he should show to the satisfaction of the court that he has exhausted all of the means within his reach to obtain within the corporation itself the redress of his grievances or action in conformity to his wishes. (*Hawes v. Contra Costa Water Co.*, 104 U. S. 450 [26 L. Ed. 832]; *Babcock v. Farwell*, 245 Ill. 46; *Continental Securities Co. v. Belmont*, 206 N. Y. 7, 51 L. R. A. [N. S.] 112; *Fleming v. Black Warrior Copper Co.*, 15 Ariz. 1, 51 L. R. A. [N. S.] 99.)"

As before stated, no other stockholder has joined plaintiff in this suit, and as was said by Mr. Justice BRANDEIS in the case of *United Copper Securities Co. v. Amalgamated Copper Co.*, 244 U. S. 261, 264: "For aught that appears, the course pursued by the directors has the approval of all the stockholders except the plaintiffs."

An allegation set forth in the second amended complaint, sets forth the following:

"(d) Should the present board of directors control

a cause of action similar to that set forth in this complaint, such proceedings would be in friendly hands by reason of the influence and the domination of the director defendants.''

Although there are four present members of the board who are charged with having obtained profit through the transaction complained of, no allegation is set forth as to how this influence and domination of the four over the eight was to be consummated. Although this alleged delinquency on the part of the board of directors occurred many years before the plaintiff was owner of this stock, we are asked to hold that her cause of action is the same as though she had been a stockholder at the time the alleged wrongs were committed. The alleged wrongs took place in 1925 and 1927. Plaintiff did not acquire her stock until July, 1936 and did not institute suit until November, 1937.

In *Dimpfell v. Ohio & Mississippi Ry. Co.*, 110 U. S. 209, Mr. Justice FIELD in his opinion at p. 210, said: ''And it does not appear that the complainants owned their shares when these transactions took place. For aught we can see to the contrary, they may have purchased their shares long afterwards, expressly to annoy and vex the company, in the hope that they might thereby extort, from its fears, a larger benefit than the other stockholders have received or may reasonably expect from the purchase, or compel the company to buy their shares at prices above the market value. Unfortunately, litigation against large companies is often instituted by individual stockholders from no higher motive.''

In *Taylor v. Holmes*, 127 U. S. 489, the Supreme Court, referring to the same rule of equity, at p. 492, said:

''Although there is in the bill a declaration that the two complainants are owners of a majority of the stock of the Gold Hill Mining Company, there is no statement as to when or how they became such, or whether

they were such stockholders during the times that injuries were inflicted, of which they now complain, in regard to the taking possession of the property by the defendants, or whether they became stockholders afterwards. In short, there is no such averment of their relation to the corporation or of their interest in the matter, about which they now seek relief, as brings this action within the principle of the decisions of this court upon the subject.''

We cannot find that the Supreme Court of this State has directly passed upon whether or not stockholders may maintain a derivative suit charging mismanagement or malfeasance on the part of the officers prior to the acquisition of stock.

In the case of *Bilhuber v. Bilhuber-Wawak Co.,* 245 Ill. App. 552, this court held that a minority stockholder cannot complain of acts occurring prior to his acquisition of stock. In the *Bilhuber* case one of the complainants, Emilie Bilhuber had acquired her shares of stock June 1, 1920. Among other things, the bill complained of a transaction which occurred in 1918, alleging that Frank Wawak, Sr., who was president of the company, purchased an automobile at a cost of $2,175, and caused the same to be paid for out of the funds of the corporation. This court in its opinion, at p. 565, said:

''The transaction complained of in the bill of complaint in relation to the purchase of an automobile and the use thereof occurred in the year 1918, long before Mrs. Bilhuber became a stockholder, and the purchase was made by resolution of the board of directors at the time, and we do not consider that she has any right to complain thereof. . . . we are further of the opinion that the trial court erred in its decree in favor of the complainant Emilie Bilhuber, and the cause is therefore reversed with directions to the superior court to enter a decree dismissing the bill for want of equity as to both complainants.''

Assuming that a cause of action does exist at the time

a stockholder purchases certain stock, after the cause of action has accrued, does the purchaser of that stock acquire the cause of action and does such purchaser acquire any more from the vendor of the stock than the vendor could have asserted himself? In the instant case, are we to consider plaintiff's rights retroactive with relation to the actions which might rightfully belong to the vendor of the stock? Would not the seller of the stock who had held it during all the years and had done nothing about such alleged fraud, be bound by the statute of limitations and laches because of the lapse of time? Such seller of the stock may have known all about the transactions complained of, and he may have approved such action. And, without any knowledge as to what had been paid for the stock and whether the vendor knew of the existence of this so-called valuable right of action, would there not have to be a full disclosure set forth in the complaint? Otherwise, if the vendor did not have such knowledge, the purchaser may have obtained from the vendor of the stock, a valuable right for an insufficient consideration. In any event, a court of equity would not knowingly engage in granting aid and assistance under such circumstances.

In the case of *Home Fire Ins. Co. v. Barber,* 67 Neb. 644, Dean Pound of the Harvard Law School, at pp. 656, 657, said:

"Sound reason and good authority sustain the rule that a purchaser of stock cannot complain of the prior acts and management of the corporation. . . .

"The rule that a suit for mismanagement cannot be maintained by one who was not a stockholder at the time, has been criticized as based on jurisdictional considerations peculiar to the federal courts and on obsolete common-law doctrines as to champerty and maintenance. 4 Thompson, Corporations, secs. 4569-4571; 1 Morawetz, Private Corporations, sec. 270. In our judgment it does not depend upon either. The federal equity rule, while designed in part to prevent collusive pro-

ceedings in fraud of the jurisdiction of those courts, goes far beyond the requirements of such a purpose. . . . The rule has its foundation in a sound and wholesome principle of equity,—namely, that the rules worked out by chancellors in furtherance of right and justice shall not be used, because of their technical character, as rules, to reach inequitable or unjust results. Resting on this basis, the 'value and importance [of the rule] are constantly manifested.' Field, J., in *Dimpfell v. Ohio & M. R. Co.,* 110 U. S. 209. . . . The right of the stockholder to sue exists because of special injury to him for which otherwise he is without redress. If his interest is trifling and the injury thereto of no consequence, he cannot sue to compel righting of wrongs to the corporation. [Citing authorities.] Hence there is obvious reason for holding that one who held no stock at the time of the mismanagement ought not to be allowed to sue unless the mismanagement or its effects continue and are injurious to him, or it affects him specially and peculiarly in some other manner. . . .''

In the instant case there is no allegation that the wrong alleged is a continuing one or the acts heretofore charged or their effects injuriously continue and affect plaintiff specially or particularly in some other manner.

Among the other allegations of the second amended and supplemental complaint are set forth the following:

(c) The present board of directors of Standard Oil has for a long time been aware of the acts constituting the wrongs alleged in this complaint. Further, express notice and information concerning the transgressions of directorial duty, herein set forth, were fully disclosed to the present board of directors by the aforesaid Wilhelmi action. The present board of directors obtained at least as much notice from such suit as they would have obtained from a formal demand by this plaintiff.

(d) Should the present board of directors control a cause of action similar to that set forth in this com-

plaint, such proceedings would be in friendly hands by reason of the influence and the domination of the director defendants.

(e) The failure of the present board of directors to take action in the face of its knowledge and notice of the wrongs here complained of indicates their unwillingness to prosecute a cause of action against the director defendants.

We do not think such allegations and the use of the many adjectives contained in this condemnation of the board and the conclusions to be drawn from such allegations are sufficient reason to excuse failure to make a demand upon the board. Inasmuch as this suit is based upon a charge of fraud, allegations of mere nonfeasance or neglect on the part of some of the directors to acquire knowledge, would not be a sufficient basis, even if properly alleged, upon which to draw the inference or make the deduction that a demand upon defendants to commence suit would be futile.

Other points have been raised in the briefs, but we do not think it necessary to discuss them further at this time. Suffice it to say, we are of the opinion that the trial court did right in dismissing the bill of complaint.

For the reasons herein given the decree of the circuit court dismissing the bill of complaint for want of equity is affirmed.

*Decree affirmed.*

HEBEL and BURKE, JJ., concur.