(No. 33234.—

WILLIAM LAMPROPULOS, Admr., Appellant, *vs.* KEDZIE OGDEN BUILDING CORPORATION *et al.*, Appellees.

*Opinion filed October 25, 1954.*

WILLIAM E. RODRIGUEZ, of Chicago, (RICHARD P. GARRETT, of counsel,) for appellant.

GROSSMAN & GROSSMAN, of Chicago, (SAMUEL GROSSMAN, of counsel,) for appellees.

Mr. JUSTICE DAILY delivered the opinion of the court:

This direct appeal, involving a freehold, seeks review of a decree of the circuit court of Cook County dismissing for want of equity complaints in two causes, which were consolidated, whereby it was sought to set aside certain conveyances of real property and to dissolve a corporation.

Both actions were commenced by Sam Lampropulos, since deceased, and it is the administrator of his estate who is the appellant in this court. Defendants-appellees are Lampropulos Bros. Company, a corporation, Kedzie Ogden Building Corporation, George Lampropulos, the sole stockholder of the latter corporation, and others whose interest need not be related. A hearing was conducted before a master in chancery who, on motion of appellees at the conclusion of appellant's evidence, recommended that both causes be dismissed for want of equity. Exceptions to the master's report were overruled and thereafter the chancellor entered the decree from which this appeal is taken.

The facts to be gathered from the briefs and a rather crytic abstract disclose that four brothers, Charles, George, Samuel and William Lampropulos started a confectionery business sometime in 1910. Sam, who had been employed in a similar business partly owned by George and which had just failed, was instrumental in finding the location for the store at 3168 Ogden Avenue, Chicago, but it was Charles who commissioned him to do so, who paid his expenses, and who apparently negotiated the terms of the lease which was taken in Charles's name. It appears too that it was Charles, with possibly some help from George, later repaid, who purchased the fixtures for the store and took a bill of sale in his name. There was no written partnership or other agreement, no formal understanding as to their respective rights in the business, and, initially, when profits were meager, the brothers drew money only as needed for their living expenses. During the first year of operation Sam and William worked full time at the store while Charles and George, who had employment in a manufacturing company, worked evenings; thereafter, however, all four brothers devoted full time to the store except for various intervals when they returned to Greece. Sam, it appears, was fired once by Charles in 1911, returning in 1914; was fired again in 1919, but returned to work in

1933, after Charles's death, and continued in the store until 1948 when George fired him permanently.

In 1917, Charles entered into a contract for a warranty deed to purchase the real estate in controversy. Shortly thereafter, the confectionery store was incorporated as Lampropulos Bros. Company. Charles and George were the principal stockholders and Sam did not then own any stock. Following the incorporation, Charles transferred his interest in the real-estate contract to the corporation in exchange for stock, the consideration being the appraised value of Charles's equity in the contract. In 1924, George sold his stock to Charles, making the latter owner of all stock with the possible exception of four shares owned by William and another party, neither of whom had any real interest in the business, because such shares were listed in their names merely to qualify them as directors. Subsequently, on December 15, 1924, the corporation quitclaimed to Charles its right, title and interest in the real estate embraced by the contract, Charles signing the deed as president and William as secretary. There appears to have been no formal stockholders' or directors' meeting at any time, nor any formal authorization for the corporation to convey. Five days after the conveyance Charles completed the contract and received a warranty deed to the premises from the seller. Between the time Charles received the deed and his death some nine years later, he executed leases to tenants in the building in the name of Lampropulos Bros. Company, but in all instances handled the negotiations individually.

Sometime in 1931, Charles conveyed the real estate to a bank in a trust that named himself as sole beneficiary and the title was thus vested when he died in 1933. By his will Charles bequeathed to George 55 per cent of the capital stock in the corporation and the balance of his shares to Sam and William. George was likewise named as executor and residuary devisee and, in the course of probate, received

a deed to the real estate from the bank in his capacity as executor. As executor he deeded the property to himself and thereafter, with his wife, conveyed to the Kedzie Ogden Building Corporation, in which George was the sole stockholder, the present title holder of record.

After Charles's death, George ran the business of Lampropulos Bros. Company and Sam and William likewise continued to work in the store. This arrangement continued until 1948 when George discharged Sam, an action which precipitated this litigation by Sam shortly thereafter.

The only controversy in this court centers around the ownership of the real property referred to; the dissolution of the Lampropulos Bros. Company being collaterally dependent upon a determination of such ownership. By one count of his complaint, Sam alleged that Charles purchased the property in behalf of all four brothers and that all conveyances of it, down to and including the present title holder, have been impressed with a trust of which they are the beneficiaries. By a different count, he sued as a stockholder and alleged that the conveyance by the corporation to Charles was itself impressed with a trust and was made to enable Charles to take and hold the title for the benefit of the corporation, and that the consideration for the purchase of the property was paid by the corporation. For their part, appellees denied that Charles had acted as agent for the brothers in purchasing the real estate, and asserted that Charles was the true owner of the real estate at all times. In addition, their answer set up the defense of *laches* and alleged that Sam was not a stockholder when the corporation conveyed to Charles. It is appellant's contention here that the evidence presented in the trial court made a *prima facie* case, sufficient to require appellees to meet or rebut it, and that the court erred in dismissing the cause for want of equity.

Appellant does not seriously pursue the contention that Charles bought the property as agent for all the brothers,

and a review of the record fails to disclose any evidence reasonably or clearly establishing that such was the case. It is insisted that Charles's action of taking leases in the name of Lampropulos Bros. Company is an indication that he did not consider himself free and clear of the interests of the others. However, in view of the additional facts that Charles negotiated such leases in his capacity of an individual and retained the rentals without question from his brothers, we think the record is equally susceptible of a conclusion that Charles considered himself as owner to the exclusion of his brothers.

In the arguments here, appellant lays greatest stress on the theory that Charles, as a director, stood in a fiduciary relation to the corporation which disqualified him from receiving corporate property for his own benefit and that, upon a breach of his fiduciary duty, Charles held the property acquired by him in trust for the corporation. It is contended that the transfer to Charles was illegal, since his own vote was needed to authorize the conveyance; that the burden is on Charles's successors in interest to show that the conveyance was fair, and that the manner and time of Sam's acquisition of stock in the corporation had no effect on his right to bring this action. While we are convinced from our examination of the evidence that there was no fraud or illegality in the conveyance from the corporation to Charles, it should be observed, from the facts disclosed by the record, that whatever rights Sam or any of the present stockholders of Lampropulos Bros. Company acquired since 1933 are rights conferred by reason of the legacies in Charles's will. This is particularly true of Sam, for prior thereto he was but an off-and-on employee and acquired no interest in the corporation until Charles's bequest to him. The net effect of appellant's contention is that Sam, as donee, was seeking to impugn his benefactor with fraud, something which Charles, as the

sole owner of the stock, could not and would not conceivably do.

While it was held in *City of Chicago* v. *Cameron,* 22 Ill. App. 91, upon which appellant relies, that the time and manner of the plaintiff's acquisition of stock, and the intent with which he acquired it, did not affect his right to bring suit against allegedly wrong-doing directors, more recent authorities establish that the right of a stockholder to maintain a derivative action based upon mismanagement or misfeasance by officers or directors, occurring prior to his acquisition of stock, is not an unqualified one. (See: 148 A.L.R. 1090; *Caplow* v. *Hershon,* 331 Ill. App. 267, 72 N.E. 2d 868; *Goldberg* v. *Ball,* 305 Ill. App. 273, 27 N.E. 2d 575.) Indeed, in *Babcock* v. *Farwell,* 245 Ill. 14, a stockholder's suit to have certain contracts declared unconscionable and void, this court held that an assignee of stock could not maintain a suit with regard to transactions with the corporation done or assented to by his assignor, stating at page 41: "The purchaser of shares of stock acquires no greater rights than his vendor. He holds by the same title and subject to the same liability. Shares of stock are merely choses in action, and the successive owners acquire only the rights held by their predecessors in title." A further finding of the *Babcock case* (p. 41) is that if a stockholder has himself consented to or participated in the acts constituting wrong to the corporation, or has waived his right to object to them, he cannot afterwards maintain a bill on account of such transactions, for the benefit of the corporation or other stockholders.

In the face of the *Babcock* decision, it is quite apparent that Sam Lampropulos stood in the shoes of his donor, Charles, who could not, and certainly would not, question the conveyance now attacked. Further, Sam's impotency to attack is weakened still more by the fact that Sam, from the period of 1933 when Charles made him a stock-

holder until 1948 when he was fired by George, participated in the business and shared its profits with no complaint or claim that Charles had been guilty of wrongful acts toward the corporation. Under the circumstances by which Sam acquired his stock, the benefits of which he accepted for fifteen years without question, it is our judgment that he could not, in good conscience, question the transaction of his benefactor.

The decree of the circuit court of Cook County dismissing the suits for want of equity is affirmed.

*Decree affirmed.*