F. MARK MILLER *et al.*, Plaintiffs-Appellees and Counterdefendants, v. F. HOXIE SMITH *et al.*, Defendants-Appellants and Counterplaintiffs.

Fifth District   No. 5—86—0345

Opinion filed June 4, 1987.—Rehearing denied July 1, 1987.

Edward J. Heller, of Reed, Heller & Mansfield, of Murphysboro, and J. Mark Maclin, of DuQuoin, for appellants.

William F. Meehan, P.C., of Cairo, for appellee Lucius S. Smith III.

PRESIDING JUSTICE KARNS delivered the opinion of the court:

Defendants, F. Hoxie Smith and Mary Smith Otto, as co-trustees of the Smith Family Trust (trustees), appeal from the order of the circuit court of Perry County declaring plaintiff, Lucius S. Smith III (Smith III) to be the owner of 101 shares of stock of Call Publishing Company. We reverse.

The controlling question on appeal is who owns the 100 shares of Call Publishing Company (the Call) originally titled in the name of Emma Weinberg. To answer this question we must turn back to 1936 and the formation of the Call itself.

In 1936, Augustus Essick, owner of the DuQuoin newspaper, was in financial trouble. Lucius S. Smith, Jr. (Smith Jr.) and Harry C.

Miller, former bankers, each put up $4,750, and in conjunction with Essick's business assets and debts, formed Call Publishing Company. Articles of incorporation were issued and a meeting of the shareholders and board of directors was held. The articles and the minutes list the original incorporators and directors as Augustus Essick, Emma Weinberg, and Leonard Knetzger. Emma Weinberg and Leonard Knetzger both were former bank employees for Miller and Smith Jr., and with the formation of the Call, became employees of the newspaper. Each of the three incorporators/directors was recorded as holding 100 of the company's 300 shares of capital stock. No stock certificates were issued at this time, however.

The Call's minute books reveal no further corporate minutes, stock transfers, or elections until May 22, 1979, when the company was "reorganized," even though Smith Jr. had purchased Augustus Essick's interest after his death in 1946 from his heirs. At the "reorganization" meeting, the shareholders, Smith Jr. claiming to represent 200 shares (Weinberg's and Essick's interests), F. Mark Miller claiming 50 shares (one half of Knetzger's interest through his father, Harry C. Miller), and representatives of the Estate of Harry C. Miller claiming 50 shares (the second half of Knetzger's interest), elected Smith Jr., Smith III, and F. Mark Miller to be the new directors. The new directors then adopted a resolution authorizing issuance of "duplicate" share certificates to replace lost or misplaced shares which the respective shareholders by affidavit claimed to own. After the duplicate share certificates were issued, Smith Jr. gave Smith III one share. A series of shareholder and directors meetings was held at which all of the above post-reorganization actions were ratified, new bylaws were adopted, and various company business was transacted.

In November of 1981, Smith III and F. Mark Miller voted to remove Smith Jr. from the board. Smith Jr. called his own special shareholders meeting in January to elect new directors, whereupon Smith III was ousted from the board. In May of 1982, Smith III purchased from the estate of Emma Weinberg any possible stock interest in the Call she may have had. After numerous complaints, motions, and trial proceedings (see *Miller v. Smith* (1985), 137 Ill. App. 3d 192, 484 N.E.2d 492), Smith III sought a determination as to who owned these 100 shares. The trial court declared that Emma Weinberg held title to the 100 shares from the date of issuance in 1936 to and including the date of her death in 1980 and that Smith III acquired title to the 100 shares by assignment from Emma Weinberg's estate. The remaining 200 shares were divided as follows: 99 shares to the trustees (Smith Jr. having died during the pendency of these proceedings), 50 shares

to F. Mark Miller, 50 shares to F. Hoxie Smith (after having purchased the estate of Henry C. Miller's interest in 1984), and one share to Smith III.

The trustees argue on appeal Emma Weinberg never acquired any interest in the Call stock but rather held the stock in trust for Smith Jr. Smith III, therefore, could not purchase any stock from Weinberg's estate and the trustees should be declared the title owners of the disputed shares. We agree.

The record reveals, in favor of Smith III's position, that Emma Weinberg was listed in the original corporate minutes as being the owner of 100 shares of Call stock, that she voted these shares at the first meeting, and that she was elected to the board of directors. She was also listed as a director in annual corporate reports filed with the Secretary of State for each year from 1937 through 1979 and designated as a shareholder in circulation notices published annually from 1937 to 1978. In addition, a 1941 Internal Revenue Service audit of the Call indicates Weinberg owned 100 shares since its formation. The record also reveals, however, in favor of the trustees' position, that Weinberg was an employee of the Call under Smith Jr. and that neither Weinberg nor her estate ever directly claimed any ownership interest in the Call. She never had any stock certificates representing the 100 shares and the inventory of her assets, affairs, and papers turned up no data referring to a claim of ownership. The attorney for her estate expressly deleted any reference to warranties of stock ownership in Smith III's draft contract for the sale of any possible interest she may have had in the Call. If she did not claim any right to stock and her estate disclaimed any right to stock, what right to stock did Smith III purchase? Furthermore, even if she once owned the stock, she did not object to the "reorganization" of the Call in 1979 which, according to Smith Jr.'s affidavit (which incidentally was submitted into evidence by Smith III), was done "with her full knowledge and consent." F. Hoxie Smith testified in his deposition that Smith III told him that Emma Weinberg was aware of what was going on during the reorganization. The fact that she had always been listed as a shareholder and preparer/signer of the annual corporate reports until 1979 and the fact that she continued to come to the office until her death in late 1980 imply she must have been aware of and acquiesced in the changes in the company structure. Moreover, the annual reports to the Secretary of State contain numerous inaccuracies. For instance, F. Mark Miller was listed as a director starting in 1948, a fact which he was unaware of until 1979. Augustus Essick was also listed as a director, registered agent, or president of the company until

1955, even though he died in 1945, and reappeared again in 1967 through 1970 as registered agent. It is also interesting to note that Smith III relies upon such records to support his claim of ownership when earlier he filed a claim against Weinberg's estate alleging negligent handling of corporate records and funds.

■ Emma Weinberg never paid any consideration for the stock; she never received any certificates of ownership. Neither she nor her estate ever claimed any ownership interest in the Call stock. Emma Weinberg was merely the title owner or nominee. Quite simply, she held the 100 shares in trust for Smith Jr. See, *e.g., Hanley v. Hanley* (1958), 14 Ill. 2d 566, 571-72, 152 N.E.2d 879, 882.

■ Smith III admits Smith Jr. put up the money for the 100 shares of stock held in Emma Weinberg's name. He argues, however, that this was done to defraud Smith Jr.'s creditors. While it is true that Smith Jr. had outstanding judgments against him near the time of the formation of the Call, these same judgments were satisfied within a relatively short period of time after formation. Even if the shares were fraudulently conveyed, Weinberg participated in that fraud and "voluntarily reconveyed" the shares for the reorganization by failing to object to and acquiescing in the reorganization. As her assignee, Smith III stands in the shoes of Emma Weinberg and has no more right than she to "reacquire" the 100 shares of stock. See *Budget Premium Co. v. American Casualty Co.* (1985), 136 Ill. App. 3d 682, 685, 483 N.E.2d 389, 391; *Peric v. Chicago Title & Trust Co.* (1980), 89 Ill. App. 3d 271, 273, 411 N.E.2d 934, 935. See also *Lampropulos v. Kedzie Ogden Building Corp.* (1954), 4 Ill. 2d 32, 37-38, 122 N.E.2d 181, 184; *Stein v. Bieber* (1951), 342 Ill. App. 583, 594, 98 N.E.2d 156, 160-61; *Russell v. Louis Melind Co.* (1947), 331 Ill. App. 182, 185-86, 72 N.E.2d 869, 870.

Smith III counters that Emma Weinberg never received notice of the reorganization meeting and was herself defrauded. Smith III has not established, however, that she did not receive notice. Two of the stockholders, one being Smith III, testified they did not notify Weinberg of the meeting and that she was in the hospital during these meetings. These facts alone do not establish lack of notice. Smith Jr., who gave notice to the other parties, did not testify, having died prior to trial. She well may have received notice of the meeting even though she was in the hospital. Moreover, she was out of the hospital in early June of 1979 and continued to come to the office for some 18 months prior to her death. The corporate records may be silent as to whether notice was given but this does not mean notice was not given. The record only reveals lack of notice by the two shareholders

so testifying.

■ Moreover, Smith III should not be allowed to profit from the alleged fraud perpetrated on Emma Weinberg if such did in fact occur. Smith III was at the reorganization meeting and ratified the 1979 stock issuance. He was aware of a possible claim of ownership and chose to do nothing about it until he desired to take over the corporation. Smith III purchased the stock claim based on information he gained while an officer and director of the company. The money used to purchase the claim in his name appears to have come from corporate funds. He did not purchase the claim in order to retire a potential liability for the corporation but instead purchased the claim for his own possible gain. To allow Smith III to have ownership in the 100 shares is to allow him to profit from his own wrongdoing. (*Cf. Melish v. Vogel* (1975), 35 Ill. App. 3d 125, 135, 343 N.E.2d 17, 25.) Smith III has purchased nothing more than a possible stock claim and any finding to the contrary is against the manifest weight of the evidence.

We note that a motion to strike the statement of facts contained in the trustees' brief was taken with the case. In light of the fact that we relied solely on the evidence contained in the voluminous record on appeal for disposition of this case, we need not consider the motion any further.

For the aforementioned reasons, we reverse the judgment of the circuit court of Perry County declaring Smith III to be the owner of 101 shares of stock of the Call Publishing Company, thereby leaving ownership of the stock as follows: 50 shares to F. Mark Miller, 50 shares to F. Hoxie Smith, 199 shares to the Smith Family Trust, and 1 share to Lucius J. Smith III.

Reversed.

KASSERMAN and HARRISON,[1] JJ., concur.

---

[1]Justice Harrison replaces Justice Jones, who retired after the cause was taken under advisement.