ROGER LONGNECKER, Plaintiff-Appellee, v. ILLINOIS POWER COMPANY, Defendant-Appellant.

Fifth District    No. 77-492

Opinion filed September 1, 1978.

Gordon R. Broom, of Burroughs, Simpson, Wilson, Hepler & Broom, of Edwardsville, for appellant.

David K. Stalker, of Smith, Allen, Larson & Stalker, of East Alton, for appellee.

Mr. PRESIDING JUSTICE EBERSPACHER delivered the opinion of the court:

This is an appeal by defendant, Illinois Power Company ("Illinois Power"), from a judgment entered by the circuit court of Madison

County following a jury trial, which judgment was in favor of plaintiff, Roger Longnecker, for personal injuries. These injuries were sustained when, on May 10, 1974, during the course of his employment, plaintiff fell from a distribution pole owned by Illinois Power. Plaintiff was employed by Southwestern Cable Television Company, a wholly owned subsidiary of Cablevision Construction Company. Cablevision Construction Company had a subcontract with Anaconda Company to install a distribution system for cable television in the East Alton-Wood River area. Anaconda Company was the general contractor for the installation of the entire cable television system for Madison County Cablevision Corporation, a subsidiary of Cable Media Corporation, which held the franchises for the operation of the system in the area. Either Cable Media Corporation or its subsidiary had an agreement with Illinois Power to rent space on Illinois Power's distribution poles for the purpose of carrying the television cables in the area.

Plaintiff originally brought this action against Anaconda Company, Madison County Cablevision Corporation, and Illinois Power. In turn, Anaconda had filed a third-party action against plaintiff's employers. However, pursuant to a loan receipt agreement, the claims against Anaconda, Madison County Cablevision Corporation and the third-party action were dismissed by the lower court prior to trial. Thereafter an amended complaint premised on negligence was filed by plaintiff against the sole remaining defendant, Illinois Power. Following trial, judgment was entered in the amount of $200,000. We find the dispositive issue presented on appeal to be whether the lower court erred in denying motions by Illinois Power for a directed verdict and for judgment *n.o.v.*

The evidence at trial showed that prior to the actual installation of the television cable, preparatory work had been done including the replacement by Illinois Power of certain of its distribution poles which had been found unsuitable by Cable Media Corporation. Of its 4,500 distribution poles in the area, 1,600 were actually used for the television cables for which Illinois Power received a rent of $4.75 per pole amounting to $7,600 per year.

In December 1972, the particular distribution pole involved in the instant case, had broken off at its base during an ice storm. Rather than replace this pole, for purposes of support Illinois Power had embedded a "stub" pole next to the existing one which was then firmly attached to it by means of metal bands.

Plaintiff testified that he had three years experience as a lineman. His union classification was as an apprentice groundman. He, however, was working "out of classification" as a journeyman cable T. V. lineman. He stated that he was qualified to do the work of a lineman. He had been

assigned to a crew whose function it was to string a support line from pole to pole to which the television cable would ultimately be attached.

By union rule and nation-wide industry custom and practice, the lineman himself determines whether or not he will climb any particular distribution pole. His decision that a pole is or is not in good condition and suitable for climbing is usually based on his own expert judgment and experience. Basic tests employed by linemen include visual inspection, pounding of the pole, such as with a hammer, to determine if it is solid or hollow, and probing the wood, such as with a screwdriver, to determine if it is soft or hard. When a lineman determines that a pole is unsafe, he may refuse to climb the pole. Plaintiff knew of this custom and practice. Illinois Power's policy was to replace poles upon request of linemen.

Plaintiff had been working at the job of stringing the support wire for three weeks prior to the occurrence. The particular pole from which he fell was the fourth pole that he had climbed that day. Plaintiff testified that as he approached the pole he noticed the stub pole attached thereto which indicated to him that it was weakened or rotten at its base. After a visual inspection of it, however, he determined that it was safe to climb. As he climbed about 25 feet up, he began having difficulty keeping his foot spikes or "gaffs" in the pole. He stated that at that spot there was "shell rot," that is, about one inch of decay on the outermost layer of wood. He thus proceeded to gouge out the wood with his gaffs until he located good wood. He stated that he had not gone back down the pole when he first encountered the problem because "I thought I was safe enough and secure to do the job." Plaintiff then fastened his safety belt around the pole and commenced his work. He had fastened the belt only around the distribution pole because the belt was too short to go around both that pole and the adjoining stub pole. When he finished, he climbed about two feet down the pole with his safety belt still on at which point he decided to climb laterally onto the adjoining newer stub pole because it appeared to be a better pole on which to descend. He then unfastened the safety belt and began moving laterally around the pole. He unfastened it because it was too short to use in the process of moving from one pole onto the other. He stated that the belt could have been extended or adjusted to a longer length so as to encompass both poles but he stated that he did not so adjust the belt before moving laterally; "Because I thought * * * I could handle it myself without it." As he was moving laterally plaintiff stated that he lost his footing as "the wood chipped off from underneath" and he fell landing flat on his back.

Randy Coffman, a groundman operator also working out of classification as a cable T. V. lineman, testified that subsequent to the instant occurrence, he too was assigned the task of climbing the same pole involved

in the instant case. He was cautious in so doing because he was aware that plaintiff had fallen off that particular pole. He stated that because the pole was stubbed, such indicated that the pole was "not in real good shape," however, from a visual inspection from the ground it appeared to be safe to climb. Consequently, he determined to climb it. When he reached the point from where plaintiff had fallen, he could see that at that spot the pole was in bad shape. He stated that it was rotten such that "you could just reach and pick pieces out of the pole". He stated that he had to be "pretty cautious" so consequently he fastened on his safety belt. His belt was longer than plaintiff's had been, so that he was able to fasten it around both the distribution pole and the stub pole. He then continued with his work. When he finished, he began to descend the pole with his safety belt still fastened. As he stepped onto the aforementioned decayed spot, his gaffs slipped. However, he was held in place by his safety belt and he thereafter descended the pole without incident. When he reached the ground, he informed his foreman that he would not again climb the pole because of its condition.

An expert witness, James Taylor, testified on plaintiff's behalf that he had performed tests upon the pole at and near its base. He stated that the pole was hollow at its base. However, because his testing had been limited to the lowest portion of the pole, he stated that he had no opinion as to the exact condition of the pole at the point from which plaintiff fell. He stated, however, that he could see that there was delay developing at that point. He further stated that because of ground conditions, poles often rot out at the ground level but remain in good condition above the ground. Nonetheless, based upon a visual inspection of the pole, Taylor testified that in his opinion the pole was dangerous and should not have been climbed.

On behalf of Illinois Power, evidence was presented showing that at the level of the pole at which plaintiff fell, the interior of the pole was solid.

Defense motions for a directed verdict at the close of plaintiff's case and at the close of all the evidence were denied by the trial court. A post-trial motion for a judgment *n.o.v.* was also denied. In passing upon the correctness of the lower court's rulings, the rule is as stated in the oft-cited case of *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14:

> "In our judgment verdicts ought to be directed and judgments *n.o.v.* entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so over-whelmingly favors movant that no contrary verdict based on that evidence could ever stand."

● 1-3 Initially we note that on appeal a question remains disputed as to whether plaintiff entered upon the distribution pole as a business invitee of Illinois Power. A person is a business invitee on the premises of another if

(1) he enters by express or implied invitation, (2) his entry is connected with the possessor's business or with an activity the possessor conducts or permits to be conducted on his premises, and (3) there is a mutuality of benefit or an advantage to the possessor. (*Madrazo v. Michaels*, 1 Ill. App. 3d 583, 274 N.E.2d 635.) Generally an independent contractor and his employees who are doing work upon the premises in the interest of the possessor as well as their own, are business invitees of the possessor. (*National Builders Bank v. Schuham*, 319 Ill. App. 546, 49 N.E.2d 825.) The evidence in the instant case leaves no question but that plaintiff entered upon the distribution pole as a business invitee of Illinois Power pursuant to the agreement of Illinois Power to rent space on its poles to Cable Media Corporation, with whom plaintiff's employer was a subcontractor. Logically, the entry of workmen such as plaintiff must have been contemplated by the agreement. It thus constituted an implied invitation which was in the interest of Illinois Power as well as Cable Media Corporation.

A possessor of land has a duty to exercise reasonable care for the safety of a business invitee. (*Genaust v. Illinois Power Co.*, 62 Ill. 2d 456, 343 N.E.2d 465.) In his amended complaint, plaintiff alleged that Illinois Power was negligent in having failed to systematically inspect its wooden utility pole; failed to install and maintain the pole so as to reduce hazards to life; failed to maintain the pole so as to bear the weight of men working on the pole; failed to warn plaintiff of the deteriorated condition of the pole; and in having installed a stub reinforcement pole to an existing distribution pole that was in a weakened and decayed condition above the ground.

■■■ The Restatement (Second) of Torts §343 (1965) states the settled law in Illinois regarding the liability of possessors of land to their invitees. (*Hutter v. Badalamenti*, 47 Ill. App. 3d 561, 362 N.E.2d 114; *Stambaugh v. Central Illinois Light Co.*, 42 Ill. App. 3d 582, 356 N.E.2d 148.) It provides:

> "A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
> (b) should expect that they will not discover or realize the danger or will fail to protect themselves against it, and
> (c) fails to exercise reasonable care to protect them against the danger."

Thus under section 343, the liability of a possessor of land cannot merely be predicated upon proof of a dangerous condition on the premises, there must also be proof that the condition was a latent or concealed one, or was existing under circumstances in which it would not be expected

to be discovered by the invitee. Generally, there is no obligation to protect the invitee against dangers which are known to him, or which are so obvious and apparent to him that he may reasonably be expected to discover them. (*Genaust v. Illinois Power Co.; Stambaugh v. Central Illinois Light Co.; Hamilton v. Faulkner*, 80 Ill. App. 2d 159, 224 N.E.2d 304.) A possessor of land is not an insurer for all accidents occurring upon his premises. "A business invitee has a responsibility for his own safety and must be held to be equally aware of all the obvious and normal hazards incident to the premises as the possessor of the land." *Genaust v. Illinois Power Co.*, 62 Ill. 2d 456, 469, 343 N.E.2d 465, 472.

In the case before us the condition at issue consisted of a thin patch of decayed or weakened wood on the outermost layer of the distribution pole just above the top metal band connecting that pole to the stub pole. This condition enhanced the risk of a lineman falling from the pole already inherent in the occupation. Plaintiff's expert witness testified that the condition was observable by a visual inspection from the ground. Plaintiff and Randy Coffman each testified that it was not; however, they stated that it was apparent upon a close inspection while the pole was being climbed. In either event, it can only be concluded from this evidence that the condition was an obvious one upon close inspection.

The evidence further shows that under a trade custom, a lineman has a duty to inspect the pole to determine its safety for the purpose of climbing. He is expected to be skilled in judgment and experience to be able to competently make the determination of the pole's safety. Correspondingly, he is entitled to refuse to climb the pole and to request the installation of a new pole as the situation warrants. Since the condition was not a latent or concealed one, it was one which Illinois Power could expect a lineman to discover by an on-site inspection and to appreciate the degree of enhanced risk arising therefrom.

■■ Plaintiff held himself out to be a skilled lineman. Further, he testified that he had, in fact, discovered the condition and that he knew of it while he performed his tasks. Thus there exists no basis in evidence for Illinois Power to have expected that plaintiff would not realize and fully appreciate the enhanced risks of harm arising from the condition or would fail to protect himself against it, such as by use of a safety belt or by a refusal to climb the pole. We note that we are not here presented with a circumstance in which plaintiff, having once discovered the condition, was no longer able to avoid the risk of harm arising therefrom. To the contrary, he discovered the condition while he was in the process of climbing the pole and at a point at which he still could have safely descended the pole while wholly avoiding the condition. Consequently, there existed no obligation by Illinois Power to protect plaintiff from the condition which was known and obvious to him.

■■ At trial plaintiff presented the additional theory of liability that Illinois Power, in failing to systematically inspect the pole and in failing to install and maintain the pole so as to reduce hazards to life as far as practicable, violated certain rules of the Illinois Commerce Commission. While the evidence fails to show that such violations occurred, it also has not been shown that these rules were intended for the benefit and protection of linemen as such. (See *Brunnworth v. Kerens-Donnewald Coal Co.*, 260 Ill. 202, 103 N.E. 178.) Rather the regulations were designed for the protection of the public generally, and to insure the service of a continual supply of electrical energy without undue interruption. Thus the rules have no application to any duty owed by Illinois Power to the instant plaintiff, individually, under the circumstances herein.

In the final analysis, the fact that the condition herein was an obvious one and actually known to plaintiff is not only relevant to the failure of plaintiff to prove negligence on the part of Illinois Power, but it also compels the conclusion that plaintiff failed to exercise reasonable care for his own safety. Plaintiff fell as he was moving laterally around the pole after he had finished his work, had descended the pole two feet and had then unfastened his safety belt. On the one hand, in so moving on the pole he had failed to gouge the wood with his gaffs in order to secure them into the good wood of the interior of the pole, as he had previously done while climbing up it. On the other hand, he unfastened his safety belt and had unnecessarily moved without the use of it thus exposing himself without protection to the very danger of which he was aware. In contrast, when subsequently Randy Coffman's gaffs slipped on the same spot, his fall was prevented by his safety belt.

Accordingly, for the foregoing reasons, the judgment entered by the circuit court of Madison County is reversed.

Reversed.

JONES and KARNS, JJ., concur.