F. MARK MILLER *et al.*, Plaintiffs-Appellees and Cross-Appellants, v. F. HOXIE SMITH *et al.*, Defendants-Appellants and Cross-Appellees (F. Hoxie Smith *et al.*, Defendants-Counterplaintiffs, v. F. Mark Miller *et al.*, Plaintiffs-Counterdefendants).

Fifth District   No. 5—85—0030

Opinion filed October 8, 1985.

J. Mark Maclin, of DuQuoin, for appellants.

William F. Meehan, P.C., of Cairo, for appellees.

JUSTICE HARRISON delivered the opinion of the court:

This appeal involves an action for declaratory and injunctive relief, damages, and an accounting concerning ownership and operation of Call Publishing Company. The central question in the case is to whom the company's 300 shares of stock belong. On motions for summary judgment by plaintiffs and defendant Call Publishing Company, the circuit court of Perry County issued an order declaring the rights, title, and interest of the various parties in the company's shares. Neither plaintiffs nor defendants agree with the stock distribution specified in that order, and both sides now appeal. For the reasons set forth below, we reverse and remand for further proceedings.

Call Publishing Company (hereinafter referred to as The Call), publisher of the *DuQuoin Evening Call* newspaper, was founded in 1936. In early December of 1936, articles of incorporation were issued and a meeting of the shareholders and board of directors was held. The minutes of that meeting show the original incorporators to have been Augustus W. Essick, Emma Weinberg, and Leonard Knetzger. Each of these three individuals is recorded as holding 100 of the company's 300 shares of capital stock, and each was elected to be a director of the company.

No further corporate minutes, stock transfers, or elections were recorded in The Call's minute books until May 22, 1979, almost 43 years later, when a "reorganization meeting" was held. At that meeting, the shareholders elected Lucius Smith, Jr., Lucius Smith III and

F. Mark Miller to be the new directors. The meeting was attended by Lucius Smith, Jr., who claimed to represent 200 shares of Call stock; F. Mark Miller, who claimed 50 shares; and representatives of the estate of Harry L. Miller, claiming the final 50 shares. A board of directors meeting was then convened, at which Lucius Smith, Jr., was elected president and treasurer; Lucius Smith III, vice-president; and F. Mark Miller, secretary. These new directors adopted a resolution authorizing issuance of "duplicate" share certificates in the following denominations: 200 shares to Lucius Smith, Jr., 50 shares to the estate of Harry L. Miller, and 50 shares to F. Mark Miller. These share certificates purportedly replaced lost and misplaced shares which the respective shareholders claimed, by affidavit, to own.

After the "duplicate" share certificates were issued, Lucius Smith, Jr., surrendered his certificate, and two new certificates were issued in its stead; one, in the amount of 199 shares, to Lucius Smith, Jr.; the other, for one share, to Lucius Smith III. Subsequently a series of shareholder and directors meetings was held at which all of the above post-reorganization actions were ratified, new by-laws were adopted, and various company business was transacted, including the re-election of Lucius Smith III as director for a three-year term.

Cooperation among the new directorship of The Call was short-lived. On November 17, 1981, plaintiffs Lucius Smith III and F. Mark Miller, in their capacities as directors of The Call, voted to remove Lucius Smith, Jr., from the company's board. Lucius Smith, Jr., responded by calling for a special shareholders meeting on January 7, 1982, and for election of a new board of directors at a meeting to be held on January 19, 1982. A shareholders meeting was held, and new directors were elected, ousting plaintiff Smith. This litigation ensued.

Plaintiff F. Mark Miller filed his original complaint in the circuit court of Perry County on January 19, 1982. Through later amendments, Lucius Smith III was added as a party plaintiff. As finally amended, plaintiffs' complaint is in five counts. Count I seeks an injunction to set aside the January 19, 1982, board meeting, reinstate the "proper" directors and officers, and prohibit Lucius Smith, Jr., from appearing at shareholder meetings and voting Call stock. Count II asks for a declaratory judgment that plaintiff Miller owns 75 shares of Call stock, plaintiff Smith owns 150 shares of stock and defendant estate of Harry L. Miller owns 75 shares of stock. Count III prays for compensatory and punitive damages against Lucius Smith, Jr., and an accounting of his expenditures on behalf of the corporation. Count IV is a derivative shareholders' action for the same relief as in count III. Count V requests a judgment declaring plaintiff Smith to be owner of

the 100 shares of Call stock originally listed in Emma Weinberg's name.

Defendants counterclaimed. Count I seeks an accounting and punitive damages against plaintiffs. Count II seeks a judgment declaring the Smith family trust to be owner of the 100 shares of Call stock originally listed in Leonard Knetzger's name. (The Smith family trust is the successor in interest to Lucius Smith, Jr., who died after suit was filed.) Count III asks the court to declare that the Smith family trust owns 299 shares of Call stock, that plaintiff Smith owns one share, and that neither plaintiff Miller nor the estate of Harry L. Miller owns any shares. Alternatively, count IV prays for a judgment declaring ownership of Call stock to be as follows: plaintiff Miller, 50 shares; estate of Harry L. Miller, 50 shares; Smith family trust, 199 shares; and plaintiff Smith, one share.

Plaintiffs moved for summary judgment on count V of their complaint. Defendant The Call moved for summary judgment on count IV of its counterclaim. Admissions, affidavits, depositions, documents, and other evidence were filed with the court. A hearing on these motions, and others, was apparently held on November 21, 1984, although no court reporter was present, and the substance of the hearing is not contained in the record. In a summary judgment order filed December 26, 1984, the circuit court declared the ownership of The Call stock to be as follows: Smith family trust, 100 shares; estate of Harry L. Miller, 50 shares; F. Mark Miller, 50 shares; and Lucius Smith III, 100 shares. Pursuant to Supreme Court Rule 304(a) (87 Ill. 2d R. 304(a)), the trial court found no just reason for delaying enforcement or appeal of this order. Defendants promptly filed this appeal, and plaintiffs have cross-appealed.

Defendants appeal only from that part of the circuit court's order finding plaintiff Smith to be the owner of 100 shares of Call stock. Our review of the court's judgment must therefore begin with a summary of the parties' respective positions regarding ownership of that stock.

The 100 shares at issue are those originally held by Emma Weinberg. Plaintiff Smith contends that the shares were actually paid for by his father, and that his father placed them in Weinberg's name in 1936 in order to defraud creditors with claims against him arising from a bank failure. Plaintiff Smith argues that this constitutes a fraudulent conveyance, that Weinberg never conveyed the shares back to Smith's father, and that Weinberg therefore possessed title to the shares valid against all but the defrauded creditors. Because plaintiff Smith purchased whatever interest Weinberg had in these shares from

her estate in 1982, plaintiff Smith now claims ownership as Weinberg's successor in interest.

Defendants, for their part, deny that title to any shares was ever conveyed to Weinberg or that any fraud was involved. Under their theory, Weinberg simply held 100 shares in trust for Lucius Smith, Jr., and voluntarily relinquished any right she had in those shares when The Call was reorganized in 1979. Even if a fraudulent conveyance did take place in 1936, defendants nevertheless assert that Lucius Smith, Jr., regained ownership in the shares because Weinberg voluntarily reconveyed them to Smith in conformity with her moral obligations. Defendant Smith family trust, as Lucius Smith, Jr.'s successor in interest, therefore claims that the 100 shares now belong to it.

On this appeal, defendants argue that summary judgment should not have been granted because genuine issues of fact remain as to the ownership of the disputed 100 shares of Call stock. They further contend that plaintiffs are precluded from obtaining any equitable relief at all under the doctrine of *laches* and unclean hands, and that plaintiffs' complaint should therefore be summarily dismissed.

■ The standards governing the circuit court's award of summary judgment to plaintiffs are clear. Under section 2—1005(c) of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—1005(c)), summary judgment is proper only "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Illinois courts have repeatedly emphasized that the purpose of summary judgment is not to try an issue of fact, but to determine whether a triable question of fact exists. (See, *e.g.*, *Hadley v. Witt Unit School District 66* (1984), 123 Ill. App. 3d 19, 23, 462 N.E.2d 877, 880-81.) Summary judgment is a drastic remedy. It must be awarded with caution in order to avoid preempting a litigant's right to trial by jury or his right to fully present the factual basis of a case where a material dispute may exist. (*Holbrook v. Peric* (1984), 129 Ill. App. 3d 996, 998, 473 N.E.2d 531, 534.) In passing on a summary judgment motion, the trial court is therefore required to construe the pleadings, affidavits, depositions and admissions on file strictly against the moving party and liberally in favor of the opponent. (*Wysocki v. Bedrosian* (1984), 124 Ill. App. 3d 158, 164, 463 N.E.2d 1339, 1344.) Only if these materials establish that the movant's entitlement to summary judgment is clear and free from doubt may such a motion be granted. *Fremont Indemnity Co. v. Special Earth Equipment Co.* (1985), 131 Ill. App. 3d 108, 112, 474

N.E.2d 926, 930.

In this case there is no genuine dispute that Emma Weinberg was listed in the original corporate minutes as being the owner of 100 shares of Call stock, that Weinberg voted these shares at the first shareholders meeting, where she was elected to the board of directors, and that, as director, she voted for adoption of by-laws requiring directors to be shareholders. Although no stock certificates were apparently issued, these facts give rise to a rebuttable presumption that Weinberg, plaintiff Smith's predecessor in interest, owned the stock in question. (*Fourdyce v. Bay View Fish Co.* (1982), 111 Ill. App. 3d 76, 80, 443 N.E.2d 790, 793.) This presumption is buttressed by evidence showing that Weinberg was listed as a director in annual corporate reports filed with the Secretary of State for each year from 1937 through 1979, that legal notices published annually from 1937 through 1978 pursuant to 39 U.S.C. sec. 3685 designate Weinberg as a shareholder, and that a 1941 Internal Revenue Service audit of The Call indicates Weinberg as having owned 100 shares since the corporation's inception.

Having fully scrutinized the record, however, this court is of the opinion that defendants have marshalled sufficient competent evidence to bring Weinberg's ownership into question. For example, affidavits and other documents on file suggest that Weinberg was an employee of The Call between 1936 and 1979, that Weinberg held the 100 shares in issue merely as trustee for Lucius Smith, Jr., her boss and predecessor in interest to the Smith family trust, that neither Weinberg nor her estate ever directly claimed any ownership interest in The Call, and that Weinberg did not object when The Call was reorganized in 1979 and no new shares were issued to her. A question remains as to whether the initial conveyance of the shares to Weinberg was undertaken in an attempt by Lucius Smith, Jr., to defraud his creditors. Although the evidence shows the existence of significant outstanding judgments against Smith at or about the time The Call was founded, other evidence indicates that these judgments were satisfied shortly thereafter. If a fraudulent conveyance did occur, there is still doubt as to whether Weinberg voluntarily conveyed the shares back to Lucius Smith, Jr. Although Weinberg did not object to the actions by the board of directors in 1979, when Lucius Smith, Jr.'s claim to her shares was approved, evidence exists suggesting that Weinberg was given no notice of this action. Weinberg may have acquiesced in the transaction, or she may have been defrauded. If defrauded, a question remains as to plaintiffs' complicity, if any, in that fraud, and whether the doctrine of unclean hands is applicable to bar

their claims. On the issue of *laches*, there is conflicting competent evidence as to whether plaintiffs delayed unreasonably in bringing this suit and, if so, whether that delay had any prejudicial effect on defendants.

■ In arguing for and against summary judgment, plaintiffs and defendants have both relied heavily on inferences they have drawn regarding the intent of Lucius Smith, Jr., Emma Weinberg, and others in proceeding as they did in handling The Call stock. Summary judgment is particularly inappropriate in such cases. (*State Bank of Annawan v. Kewanee National Bank* (1973), 16 Ill. App. 3d 272, 274, 305 N.E.2d 732, 733.) While the trial court apparently believed that the evidence submitted by plaintiffs was more probative than that proffered by defendants, such weighing and appraising of the evidence is improper on a summary judgment motion. (*Fletcher v. Boxx* (1973), 10 Ill. App. 3d 928, 931, 295 N.E.2d 248, 250.) Based upon the present record, this court has no doubt that fair-minded people could draw different conclusions regarding the transfer and ownership of the 100 shares of Call stock originally listed in Weinberg's name. Resolving all reasonable inferences in favor of defendants, as we must, we therefore conclude that the trial court erred in summarily declaring plaintiff Smith to be the owner of those shares.

■ Plaintiffs cross-appeal from that portion of the circuit court's December 26, 1984, order declaring the ownership rights of the Smith family trust and the estate of Harry L. Miller in Call stock. The rights of these parties and others were raised in defendants' motion for summary judgment on count IV of their counterclaim. As a threshhold matter, defendants argue that this appeal is premature because the trial court's summary judgment order referred on its face only to count V of plaintiffs' complaint. Defendants' view, for which no authority has been cited, is apparently that the court's omission of any specific reference to their motion for summary judgment on count IV of their counterclaim means that no final judgment yet exists on that count from which an appeal can be taken. We disagree.

Although the circuit court's summary judgment order does refer only to count V of plaintiffs' complaint, the declaratory relief granted by the court extends beyond that sought by count V. Count V dealt exclusively with the ownership rights of plaintiff Smith. As previously noted, however, count IV of defendants' counterclaim requests a declaration of the ownership rights not only of plaintiff Smith, but also of plaintiff F. Mark Miller, defendant estate of Harry L. Miller, · and defendant Smith family trust. Defendants' motion for summary judgment was pending at the time the court's order was handed down,

and that order addresses the ownership rights of each of these additional parties. Under these circumstances, the court's failure to recite that count IV of the counterclaim was included in its order is merely a failure to state the obvious. Plaintiffs' cross-appeal is properly before us.

■ Turning to the merits of plaintiffs' cross-appeal, plaintiffs argue that summary judgment on count IV of defendants' counterclaim was premature because it was granted before they had an opportunity to file an answer and without a prior disposition of their motion to dismiss that count. These arguments are well taken.

Under section 2—1005(a) of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—1005(a)), a plaintiff may not move for summary judgment until after the opposite party has appeared or after the time within which he or she is required to appear has expired. This rule applies with equal force to summary judgment motions filed by defendants on their counterclaims. The reason is obvious: counterclaims and pleadings subsequent thereto are by statute subject to the same pleading and filing requirements as complaints. Ill. Rev. Stat. 1983, ch. 110, pars. 2—608(c), (d).

The procedure established by section 2—1005 is no mere technicality. Although a summary judgment motion need not await an actual answer to the complaint or counterclaim on which it is based, the opposing party must at least be given an opportunity to file some timely response to the legal sufficiency of, or factual allegations in, that complaint or counterclaim. This procedure is necessary to enable any preliminary legal impediments to recovery by the complaining party to be identified and to insure that the factual matters at issue are properly joined for consideration by the trial court. These objectives, of course, may be accomplished not only through the filing of an answer, but also by way of such motions as those to strike and to dismiss under sections 2—615 or 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—615, 2—619) or through a cross-motion for summary judgment.

Here, the required procedure was not followed. Defendants were permitted to move for summary judgment on count IV of their counterclaim *simultaneously* with the initial filing of that count. This shortcut cannot be justified on a theory that plaintiffs' then pending motion for summary judgment satisfied the objective of properly joining the matters at issue. It did not. Defendants' request for summary judgment on count IV of their counterclaim is not a mere cross-motion to plaintiffs' summary judgment request on count V. Their respective claims are premised on different theories of recovery, and

each seeks different relief.

Although plaintiffs were unable to file any response to count IV of defendants' counterclaim prior to defendants' motion for summary judgment, plaintiffs filed a timely motion to dismiss that count shortly thereafter. Any prejudice to plaintiffs arising from the premature summary judgment motion could have been cured by the trial court at this point by first ruling on plaintiffs' motion to dismiss and then, if the motion was denied, allowing plaintiffs an opportunity to address the substance of the factual contentions raised by the summary judgment motion. Instead, the trial court took both motions under submission at the same time, and disposed of them simultaneously. This procedure was expressly disapproved by the Illinois Supreme Court in *Janes v. First Federal Savings & Loan Association* (1974), 57 Ill. 2d 398, 312 N.E.2d 605. That case holds that a trial court must first pass on the question of whether a pleading states a cause of action; if and only if that question is resolved in the affirmative should the court entertain the summary judgment motion. The rationale for this two-step process is that motions to dismiss and motions for summary judgment are governed by distinct procedures, and a combined disposition may create confusion among both the litigants and the reviewing court as to whether the error lies and what relief, if any, is appropriate on appeal.

Such confusion is present here. For example, plaintiffs' motion to dismiss asserted that The Call, under whose name count IV of the counterclaim was brought, lacks standing to seek a declaratory judgment as to ownership of its shares. This same theory was apparently relied upon by the trial court in a prior ruling at the outset of the litigation dismissing The Call as a party plaintiff. By granting The Call's motion for summary judgment, however, the court necessarily assumes that standing exists, a completely contradictory position.

Because defendants moved for summary judgment before plaintiffs had an opportunity to answer or otherwise respond to count IV of defendants' counterclaim, and because the trial court granted defendants' summary judgment motion without a prior ruling on plaintiffs' motion to dismiss, the issues on that counterclaim have yet to be properly joined and obviously cannot yet be properly reviewed by this court. Accordingly, we must reverse the trial court's grant of summary judgment on count IV of defendants' counterclaim and remand the case for further proceedings.

In conclusion, genuine issues of fact exist precluding summary judgment on count V of plaintiffs' complaint. As to count IV of defendants' counterclaim, summary judgment was premature because

the trial court failed to first make a distinct disposition of plaintiffs' motion to dismiss, and plaintiffs have not yet had the opportunity to contest the substance of that count's factual allegations. For these reasons, the summary judgment order of the circuit court of Perry County filed December 26, 1984, is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

JONES, P.J., and KASSERMAN, J., concur.