DALE HABERER, Plaintiff-Appellee, v. THE VILLAGE OF SAUGET, Defendant-Appellant.

Fifth District No. 5—86—0403

Opinion filed July 20, 1987.—Rehearing denied August 18, 1987.

Daniel J. Kordik, of Brown, James & Rabbitt, P.C., of Belleville, and John M. McMullin, of Brown, James & Rabbitt, P.C., of St. Louis, Missouri, for appellant.

Charles E. Hamilton, of Hamilton, Babka, Ltd., of Belleville, for appellee.

JUSTICE HARRISON delivered the opinion of the court:

Defendant, the village of Sauget (Sauget), appeals from a judgment of the circuit court of St. Clair County which awarded plaintiff, Dale Haberer, $209,000 for personal injuries he sustained while working as a laborer for Walbridge, Aldinger/Tarlton Corporation (WA/TC) on a construction project for Sauget. For the reasons which follow, we reverse and remand for further proceedings.

The record before us shows that Sauget employed WA/TC as the prime contractor for a new sewage treatment facility it was constructing. Plaintiff, a union laborer, was hired to work on the project by WA/TC and was assigned to serve as a "finishing tender." His job consisted of mixing different types of "grout," a cementitious material used in finishing concrete. No machines were provided for this purpose, and the grout had to be mixed manually.

When handling grout, workers are supposed to wear protective gloves. This is necessary to reduce the risk of burns from or an allergic reaction to the wet mixture. Gloves were not always made available to the workers on the Sauget project, however, and on one or more such occasions Haberer was required to manually mix a type of grout known as Masterflow 713. This type of grout is expressly in-

tended to be mixed by machine and is not to be mixed by hand. Haberer had more than 16 years of experience as a laborer, but claims that he had not used Masterflow before. As a result of his exposure to the product, he contracted cement contact dermatitis. The dermatitis became complicated by infection, and while medical treatment provided some initial relief, the condition persisted. Haberer was ultimately hospitalized for a time and was forced to stop work.

In his complaint, Haberer sought damages from Sauget for his injuries based on common law negligence. Although Haberer was employed by WA/TC and not Sauget, he claimed that liability should be imposed upon Sauget because it (a) "negligently failed to require [WA/TC] to provide a powered and rotating type mortar mixer for [his] use," (b) "negligently failed to instruct [WA/TC] on the proper use of Masterflow 713 Grout," and (c) "negligently failed to require [WA/TC] to follow instructions on the label of Masterflow 713 Grout."

Haberer moved for summary judgment on the issue of Sauget's liability, and Sauget responded by filing a cross-motion for summary judgment on the same issue. The trial court granted Haberer's motion and denied the cross-motion by Sauget, and the case proceeded to trial before a jury for an assessment of damages only. (See Ill. Rev. Stat. 1985, ch. 110, par. 2—1005(c).) The jury determined that Haberer had suffered $220,000 in damages, but found that he, himself, was 5% at fault. It reduced his recovery accordingly, awarding him the sum of $209,000. The trial court entered judgment on the verdict, Sauget's post-trial motion was denied and this appeal followed.

As grounds for its appeal Sauget contends: (1) that the trial court erred in denying its motion for summary judgment and in granting Haberer's summary judgment motion, (2) that it was unfairly prejudiced at trial by certain remarks and arguments made by Haberer's attorney, (3) that the trial court should not have permitted certain evidence to be presented to the jury, (4) that the trial court erred in refusing to direct a verdict or to grant judgment notwithstanding the verdict in its favor, and (5) that the jury's verdict was contrary to the manifest weight of the evidence.

■■ We consider first the propriety of the trial court's disposition of the parties' cross-motions for summary judgment. The purpose of summary judgment is not to try an issue of fact, but determine whether a triable issue of fact exists. (*Miller v. Smith* (1985), 137 Ill. App. 3d 192, 196, 484 N.E.2d 492, 495-96.) Although summary judgment is recognized as a salutary procedure in the administration of justice, it should be granted with caution so that the right to trial of conflicting facts and inferences is not usurped. Only when the plead-

ings, depositions and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law should summary judgment be awarded. (*Elliott v. Chicago Title Insurance Co.* (1984), 123 Ill. App. 3d 226, 231, 462 N.E.2d 640, 644.) Moreover, because it is a drastic remedy, summary judgment should not be granted unless the movant's right to such relief is clear and free from doubt. See *Miller v. Smith* (1985), 137 Ill. App. 3d 192, 196, 484 N.E.2d 492, 496.

 █ The mere filing of cross-motions for summary judgment, as in the case *sub judice*, does not establish that there is no issue of material fact, nor does it obligate a court to render summary judgment. (*Beverly Bank v. Alsip Bank* (1982), 106 Ill. App. 3d 1012, 1016, 436 N.E.2d 598, 602.) While summary judgment may be granted on cross-motions by the parties where "[i]t is clear that all material facts [are] before the court; the issues [are] defined; and the parties [are] agreed that only a question of law [is] involved" (*Allen v. Meyer* (1958), 14 Ill. 2d 284, 292, 152 N.E.2d 576), this is not such a case. The trial court was therefore still required to make an independent determination as to whether a genuine issue of material fact remained. See *Allis-Chalmers Corp. v. Staggs* (1983), 117 Ill. App. 3d 428, 434, 453 N.E.2d 145, 150.

Having fully examined the record in light of the foregoing standards, we believe that the trial court properly refused to enter summary judgment on the issue of liability in favor of Sauget. Citing, *inter alia*, the decision by our supreme court in *Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456, 343 N.E.2d 465, and the decision by this court in *Longnecker v. Illinois Power Co.* (1978), 64 Ill. App. 3d 634, 381 N.E.2d 709, Sauget argues that its liability must be assessed in terms of the liability of possessors of land to their invitees as set forth in section 343 of the Restatement (Second) of Torts (1965). That section provides:

"A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger."

■■ ■ Under section 343, the liability of a possessor of land cannot be predicated merely upon proof of a dangerous condition. There must also be proof "that the condition was a latent or concealed one, or was existing under circumstances in which it would not be expected to be discovered by the invitee." (*Longnecker v. Illinois Power Co.* (1978), 64 Ill. App. 3d 634, 639-40, 381 N.E.2d 709, 714.) Correspondingly, there is generally no obligation to protect the invitee against dangers which are known to him, or which are so obvious and apparent to him that he may reasonably be expected to discover them. 64 Ill. App. 3d 634, 640, 381 N.E.2d 709, 714.

Sauget points out that the record before the trial court on the parties' cross-motions for summary judgment established that while plaintiff professed not to have previously worked with Masterflow 713 grout, he had more than 16 years of experience as a laborer, he had contracted contact dermatitis before as a result of being exposed to concrete on a job at which he had worked prior to being hired by WA/TC for the Sauget project, he had worked with concrete for many years before this prior outbreak, and he knew that rubber gloves should be worn when mixing concrete in order to prevent injury or irritation to the skin. The record further established that people in the construction business are generally aware of the risk of contracting contact dermatitis from working with concrete and the need for wearing protective equipment, including rubber gloves, when doing so, and that this knowledge was shared by Haberer's foreman and by WA/TC. Based upon this evidence, Sauget asserts that there was no basis for it to expect that Haberer would not realize the dangers inherent in mixing grout manually without protective rubber gloves. Hence, it contends that it cannot, as a matter of law, be held to have breached any duty to Haberer.

■■ ■ We do not agree with this analysis. The flaw in Sauget's argument is that Haberer's claim against it is not really premised upon the existence of some dangerous condition on the land, but upon Sauget's negligence in exercising control over WA/TC, its independent contractor. As a general matter, an employer of an independent contractor is not liable for the acts and omissions of the independent contractor. (*Pasko v. Commonwealth Edison Co.* (1973), 14 Ill. App. 3d 481, 487, 302 N.E.2d 642, 647.) Nevertheless, section 414 of the Restatement (Second) of Torts (1965) provides:

"One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his

failure to exercise his control with reasonable care."

██ ■ This section and the comments thereto have been recognized as expressing the law of Illinois. (*Weber v. Northern Illinois Gas Co.* (1973), 10 Ill. App. 3d 625, 639, 295 N.E.2d 41, 50; *Pasko v. Commonwealth Edison Co.* (1973), 14 Ill. App. 3d 481, 488, 302 N.E.2d 642, 648.) The effect of these provisions has been to broaden the basis upon which liability may be imposed on an owner of land who has contracted for construction work to be undertaken on its premises. (See *Foster v. National Starch & Chemical Co.* (7th Cir. 1974), 500 F.2d 81, 83.) Applying section 414, the courts of this State have now recognized that an employee hired by an independent contractor to do construction work may obtain recovery for injuries sustained in the course of that work from the owner of the premises where the owner has retained the requisite control over the work and has failed to exercise that control properly. See *Weber v. Northern Illinois Gas Co.* (1973), 10 Ill. App. 3d 625, 295 N.E.2d 41; *Pasko v. Commonwealth Edison Co.* (1973), 14 Ill. App. 3d 481, 302 N.E.2d 642.

██ ■ Where, as here, an employee of an independent contractor seeks recovery against an owner under section 414, we do not believe that his claim will automatically be defeated because he knew of the danger causing his injury, or because the danger was so obvious that he should have discovered it, or because he failed to protect himself against the danger. These matters will not, in other words, eliminate an owner's duty to an employee of its independent contractor. Rather, they are relevant only on a question of whether the owner's obligation to pay damages should be reduced based on principles of comparative negligence. For this reason, we hold that the trial court was correct in its determination that the pleadings, depositions and affidavits on file at the time Sauget moved for summary judgment failed to establish that no genuine issue of material fact remained and that it was entitled to judgment as a matter of law on the issue of liability.

While the trial court properly denied Sauget's motion for summary judgment, we must conclude that it erred in granting summary judgment for Haberer. Comment *c* to section 414 of the Restatement (Second) of Torts (1965) states that in order for the rule stated in that section to apply,

"[i]t is not enough that [the employer] has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe

alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way."

Whether such control was retained here is far from settled. The record before the trial court did show that Sauget hired Marsh & McLennan Protection Consultants to provide safety consulting services on the sewage treatment project. Robert Cole was assigned as safety consultant for the project. Although Cole was paid by Marsh & McLennan, he testified in his deposition that he worked for Sauget and that, until recently, he reported for work directly at the project site and was present at the site every day.

A detailed loss control program prepared by Marsh & McLennan was adopted by Sauget for the project. It set forth numerous requirements for safety instruction and accident investigation and reporting. It also established safety rules governing a wide range of procedures necessary in construction of the project. Among the obligations it imposed on the contractor, its foremen and supervisory personnel was the responsibility for seeing that workmen used proper personal protective equipment, such as gloves, eye protection and foot protection, as well as proper tools and equipment.

The safety rules in the loss control program were distributed to the contractors on the project, including WA/TC, the prime contractor. Cole indicated that he was responsible for enforcing compliance with these safety rules. He stated, "I made regular and continuous inspections of the job site, I held safety meetings, I analyzed the data, the accident loss, I kept all the records for injuries, that sort of thing." According to Cole, during his inspections of the site, he would observe whether the workers were following "normal safety working practices." He also testified that he "made verbal contact with the site safety director for WATC and advised him of violations that [he] had noted and what action had been or should be taken or suggested it."

 What is not clear, however, is what force and effect Cole's communications with the WA/TC safety director carried. We cannot determine with any certainty whether Cole, acting on behalf of Sauget, could even do such things as order work halted if he felt that unsafe work practices were being followed or prevent the work from being resumed until, in his opinion, proper means were employed to avoid injury or property damage, or whether he had authority to order unsafe or inadequate equipment removed from the site. Constru-

ing the pleadings, affidavits and depositions strictly against Haberer and liberally in favor of Sauget, as we must (see *Miller v. Smith* (1985), 137 Ill. App. 3d 192, 196, 484 N.E.2d 492, 496), we therefore believe that a genuine issue of fact remained for resolution by the jury as to whether Sauget had retained sufficient control over the safety aspects of the project that it could be held liable for failure to properly exercise that control. Haberer's entitlement to summary judgment was not clear and free from doubt, and his motion should have been denied.

Because the trial court erred in granting summary judgment to Haberer on the issue of Sauget's liability, the jury's award of damages, which presumed the existence of such liability, must be set aside. In view of this result, the remaining issues raised by Sauget on this appeal need not be addressed.

For the foregoing reasons, the judgment of the circuit court of St. Clair County is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

KASSERMAN and LEWIS*, JJ., concur.