Steven C. **HARMON**, Plaintiff,

v.

**UNITED STATES of America**, Defendant.

No. 96 C 7662.

United States District Court,
N.D. Illinois,
Eastern Division.

Jan. 22, 1998.

Darius H. Bozorgi, Anesi, Osmon, Rodin, Novak & Kohen, Chicago, IL, for Plaintiff.

Kurt N. Lindland, U.S. Attys. Office, Chicago, IL, Juan E. Milanes, Douglas Coleman, U.S. Dept. of Justice, Torts Branch, Civil Div., Washington, DC, for Defendant.

## MEMORANDUM OPINION
## AND ORDER

KOCORAS, District Judge.

This matter comes before the Court on Defendant United States' motion for summary judgment. For the following reasons, the motion is denied.

## BACKGROUND

Defendant United States of America ("the United States") contracted with Maytag Aircraft Corporation ("Maytag") to "provide alongside aircraft fuel delivery and operation of bulk storage facility for the period of 01 May 92 through 31 May 96" at the Glenview Naval Air Station. Section C of this contract required the contractor, Maytag, to provide qualified personnel and to ensure that all new employees were trained and passed the appropriate competency tests. On October 26, 1993, Plaintiff Steven Harmon ("Harmon") was hired by Maytag as a driver/operator trainee. Prior to working for Maytag, Harmon had received a college degree in airframes and power plants, where he learned about the dangers of jet blast.

The Maytag Training Plan contains the following relevant provisions: "ALWAYS wait until the props or jet engines are fully stopped" before refueling aircraft; "you will not refuel/defuel any aircraft when an unsafe condition exists"; "no vehicle shall be parked or driven in the danger area of an aircraft while engines are in operation"; and, all personnel "must be able to recognize and handle potential hazards."

Harmon completed Maytag's training for driver/operators, which consisted of one day of training. On November 1, 1993, Harmon was promoted to the position of driver/operator and continued in that position until November 23, 1994. Though there is some dispute about the maximum number of planes that Harmon could refuel in one day, Harmon testified that he would consider refueling thirty-two planes in a single day to be a busy day.

This lawsuit concerns an incident which occurred on November 23, 1994. On this date, the United States was the owner of the Glenview Naval Air Station in Glenview, Illinois. At 1600 hours, a Rich International DC–8 jet aircraft landed at Glenview Naval Air Station. Being a "military contract aircraft", Harmon was called to service it. Harmon was instructed that the fueling of the DC–8 was to be done quickly in order to get passengers home for the Thanksgiving holiday. Harmon asserts that this was the first time in his career that he was required to fuel a DC–8 aircraft.

After being called in to fuel the aircraft, Harmon was motioned to enter the area of the aircraft and directed where to park by T-line personnel. Harmon drove the refueling truck in front of the starboard wing, exited the truck and proceeded to retrieve a clipboard to write down the aircraft's tail number. When Harmon exited the truck, the T-line personnel were no longer in the area of the aircraft. He walked under the starboard wing between the fuselage and the engine. He then stepped back to read the tail numbers and was hit by a blast of air and injured. Harmon alleges that he was thrown approximately 20 feet by this jet blast.

Harmon admits that he did not look at the jet engines to ascertain whether the engines were turning because he relied on T-line personnel to ensure that the engines were shut down completely before they signaled him into the area. Harmon admits his belief that, had he looked at the jet engines, he could have seen whether they were turning. After being hit by the blast of air, Harmon returned to the fuel farm, and the refueling job was completed by another Maytag employee.

The United States military set the procedures for, and Navy personnel supervised, the fueling and refueling aircrafts on the T-line. T-line personnel and other workers, including Harmon, wore hearing protection while working on the T-line. Though the United States asserts that there is a noticeable lack of noise when jet engines are shut down, Harmon contends that at the time of his injury running jet engines, diesel truck engines, and other machinery created a very loud atmosphere on the T-line.

"Aircraft handlers" are Navy personnel who can be identified by their yellow shirts, cranials, vests and jerseys. Aircraft handlers are responsible for signaling to the air crew to shut down the jet engines, which is done by pointing to the aircraft with one hand and performing a cutting motion across their throat with the other. Though the United States disputes the extent of their responsibility, Harmon contends that aircraft handlers are responsible for ensuring that jet

engines are shut down completely and then signaling to the fuel truck driver to enter the area of the aircraft.

Harmon also asserts that fuel truck drivers are not allowed to enter the area of an aircraft until the T-line personnel determine that it is safe and signal the drivers in. Truck drivers would wait 50 to 100 feet away from the aircraft until they were signaled in by the aircraft handlers. Fuel truck authorities have no authority over T-line personnel; in contrast, T-line personnel had the authority to stop the work on the T-line at any time it was thought to be unsafe. For example, if T-line personnel instructed a fuel truck driver to move his truck and he refused, the T-line personnel had the authority to stop fueling operations.

On March 9, 1995, Plaintiff Harmon filed a standard Form 95 claim with the Department of the Navy for his injuries resulting from the jet blast incident. Subsequently, Harmon brought this action pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq., against the United States. This action alleges that the United States was negligent in that its employees: (1) improperly operated, managed, maintained and controlled the aircraft and runway; (2) failed to make reasonable inspection of the aircraft and runway when it was necessary to prevent injury; (3) failed to warn Harmon of the dangerous condition of the aircraft and runway; (4) failed to properly connect and install the auxiliary power unit to the aircraft; (5) failed to ensure that the aircraft's engines had been turned off before refueling procedures commenced; (6) allowed and permitted refueling procedures to begin before the aircraft had been properly connected to the auxiliary power unit and the aircraft's engines turned off; (7) improperly signaled and/or notified Harmon to commence refueling procedures when these procedures could not be performed in a safe manner; and (8) failed to properly staff the runway with the appropriate number of personnel so that the installation of the auxiliary power unit and subsequent refueling procedures could be performed in a safe manner.

Defendant United States has now moved for summary judgment, asserting that no genuine issue of material fact need be resolved at trial. Before addressing the merits of this motion, however, it is necessary to define the appropriate legal standard.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Once a motion has been filed for summary judgment, the burden shifts to the nonmoving party to show through specific evidence that a triable issue of fact remains on issues on which the nonmovant bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence. *Id.*

## DISCUSSION

Under the Federal Tort Claims Act ("FTCA"), the United States may be held liable in tort for personal injury or death "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b). The FTCA further provides that, in such cases, the United States is to be held to a standard as "if a private person would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *Id.* Therefore, the principles of tort law recognized in Illinois govern Harmon's claim in this case.

Harmon's complaint contains eight contentions of fact that allege negligence on the part of the United States. Though brought pursuant to FTCA because the defendant is the United States, this is basically a run-of-the-mill tort case. Harmon contends that the United States had a duty to ensure his safety, and that this duty was breached. Though the parties seemingly agree that the instant motion turns on whether any duty to

protect Harmon can be attributed to the United States, the parties dispute the source from which such a duty could be inferred. Harmon argues that the Restatement (Second) of Torts § 414, which places a duty of reasonable care on the employer of an independent contractor, supplies the duty in this case; contrarily, the United States argues that Harmon's only potential theory of recovery must be premised on the duty of a landowner to ensure the safety of his premises under Restatement (Second) of Torts § 343. The Court will thus consider both of these potential sources of duty upon which Harmon's negligence action could be based.

### I. The United States' Duty Under § 343

■ The United States argues that, if it is liable in this case, its liability must be premised on section 343 of the Restatement (Second) of Torts, which provides:

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against that danger.

Though Illinois has imposed such a duty on landowners, this duty to protect invitees does not extend to dangers that are either known to the invitee, or which are so obvious and apparent that the invitee may be reasonably expected to discover them. *Longnecker v. Illinois Power Co.*, 64 Ill.App.3d 634, 21 Ill.Dec. 382, 381 N.E.2d 709, 714 (Ill.App.1978). Hence, the Illinois Supreme Court has repeatedly held that there is no duty to warn a person of an "open and obvious" danger. *See Bucheleres v. Chicago Park Dist.*, 171 Ill.2d 435, 216 Ill.Dec. 568, 665 N.E.2d 826, 832 (Ill.1996).

The United States asserts that the dangerous condition alleged in this case—a jet blast from an active aircraft engine—was an open and obvious danger to Harmon. In support

of this assertion, the United States cites to previous cases in which the dangers posed by jet engines have been found to be open and obvious, thus precluding recovery by an injured plaintiff. In *Nally v. City of Chicago*, 190 Ill.App.3d 218, 137 Ill.Dec. 685, 546 N.E.2d 630 (Ill.App.1989), the Illinois Appellate Court held that an airport telephone repairmen could not recover in tort for hearing loss resulting from aircraft noise. The court found that the danger posed by such noise was open and obvious to one working at an airport, and that therefore the defendant owed no duty to protect the plaintiff. *Id.* at 633. An even more factually similar situation was present in *Moloney v. United States*, 354 F.Supp. 480 (S.D.N.Y.1972), in which a gardener employed to care for the grass around the runways at LaGuardia Airport was blown over by the jet blast of a departing aircraft. The court in that case similarly held that the gardener was precluded from recovering because of his contributory negligence in exposing himself to such a patent danger. *Id.* at 482.

■ Though the determination of whether a danger is open and obvious is generally a question of fact, *Steinhauer v. Arnie Bauer Cadillac Co.*, 172 Ill.App.3d 314, 122 Ill.Dec. 318, 526 N.E.2d 577 (Ill.App. 1988), such questions may be decided as a matter of law where reasonable men could not disagree as to the conclusion to which the facts lead. *Charras v. Township High School Dist.*, 195 Ill.App.3d 540, 142 Ill.Dec. 673, 553 N.E.2d 23 (Ill.App.1990). In this case, the Court cannot conclude, as a matter of law, that the jet blast danger was open and obvious to a reasonable person in Harmon's position. Unlike the plaintiffs in *Nally* and *Moloney*, Harmon can reasonably argue that he was unaware of the danger. The plaintiff in *Nally* could not reasonably argue that he was unaware of the danger of jet noise at an airport; likewise, the *Moloney* plaintiff could not reasonably argue that he was unaware of the jet blast danger on the runway where aircraft took off. In this case, in contrast, Harmon reasonably could believe that the jet engines were not active because they were normally shut down before he was allowed to enter the area with his fuel truck.

Furthermore, Harmon relied on the direction of Navy personnel in deciding when it was safe to enter the aircraft area. Thus, this Court is unwilling to conclude as a matter of law that the United States owed no duty to Harmon to protect him from the danger of jet blast because this danger was open and obvious.

 Even if we did find the jet blast danger to be open and obvious, however, the United States would still not be entitled to judgment as a matter of law. The law recognizes an exception to the open and obvious danger doctrine when " 'the possessor should anticipate the harm despite such knowledge or obviousness.' " *Ward v. K mart Corp.*, 136 Ill.2d 132, 143 Ill.Dec. 288, 554 N.E.2d 223, 231 (Ill.1990) (*quoting* Restatement (Second) of Torts § 343A). A comment to this section of the Restatement explains that a landowner should anticipate harm " 'where the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it.' " *Bucheleres*, 216 Ill.Dec. 568, 665 N.E.2d at 834 (quoting Restatement (Second) of Torts § 343A, Comment f, at 220). Harmon's case would seem to comfortably fit within this "forgetfulness or distraction" exception to the general rule of no liability for open and obvious conditions. An airport is a very noisy place to work, and Harmon was required to wear hearing protection because of the noises involved with the jets, the diesel engine of the fuel truck, and the auxiliary power unit on the fuel truck. In this frenzied environment, and given Harmon's understanding that the Navy personnel would not signal him into the aircraft area until the engines were shut down, the Court finds that the United States should have anticipated that fuel truck drivers could be distracted and thus unaware of the potential jet blast danger. *Cf. Lovvorn v. United States*, 439 F.Supp. 1280 (E.D.Mo.1977) (where plaintiff was injured by walking into a revolving propeller, the court held that, despite the open and obvious nature of the danger, defendant had a duty to warn the plaintiff that the propellers were left running). Therefore, even if the danger of jet blast was open and obvious, the United States still had a duty to protect Harmon because the potential for distraction was great.

Since the Court finds that a triable issue of fact remains upon whether the danger of jet blast injury was open and obvious, the United States' motion for summary judgment must be denied.

## II. The United States' Duty Under § 414

 Harmon contends that his negligence claim in this case, rather than being premised on the existence of a dangerous condition on the United States' property, actually is based on the theory that the United States was negligent in exercising its control over a contractor. Section 414 of the Restatement provides that:

> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

This section has been recognized as expressing the law of Illinois. *See Weber v. Northern Illinois Gas Co.*, 10 Ill.App.3d 625, 295 N.E.2d 41, 50 (Ill.App.1973); *Pasko v. Commonwealth Edison Co.*, 14 Ill.App.3d 481, 302 N.E.2d 642, 648 (Ill.App.1973). Under this section, Illinois courts have found that an employee hired by an independent contractor to do work may obtain recovery for injuries sustained during the course of that work from the owner of the premises, provided the owner has retained the requisite control over the work and has failed to exercise the control properly. *Id.* Thus, Harmon (an employee of contractor Maytag) asserts that the United States (the owner of the premises who entrusted Maytag) breached its duty under § 414 for failing to properly exercise its control over the refueling process.

 Harmon's preference for this theory of recovery is based on the fact that, under Illinois law, the obviousness of a danger cannot, as a matter of law, relieve a defendant of his duty under § 414. As succinctly stated by the Illinois Appellate Court:

Where, as here, an employee of an independent contractor seeks recovery against an owner under section 414, we do not believe that his claim will automatically be defeated because he knew of the danger causing his injury, or because the danger was so obvious that he should have discovered it, or because he failed to protect himself against the danger. These matters will not, in other words, eliminate an owner's duty to an employee of its independent contractor. Rather, they are relevant only on a question of whether the owner's obligation to pay damages should be reduced based on principles of comparative negligence.

*Haberer v. Village of Sauget,* 158 Ill.App.3d 313, 110 Ill.Dec. 628, 511 N.E.2d 805, 808 (Ill.App.1987). Therefore, under this theory, the United States cannot argue that it owed no duty to Harmon because the danger of jet blast was open and obvious. Furthermore, the United States cannot dispute that it had the requisite degree of control for this section to apply, since the entire air station, and the refueling operations in particular, were under the supervision of Navy personnel. *Cf. Haberer,* 110 Ill.Dec. 628, 511 N.E.2d at 809 (where question remained as to whether owner's control had "force and effect"). Thus, section 414 seemingly provides an independent basis upon which to deny the United States' motion for summary judgment.

The United States asserts, however, that section 414's "contractor liability" is inapplicable to the United States, contending that the FTCA does not waive sovereign immunity with respect to such claims. This argument is specious. It is correct that the liability of the United States cannot be premised upon the acts or omissions of a contractor. *See United States v. Orleans,* 425 U.S. 807, 814, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976); *Logue v. United States,* 412 U.S. 521, 526, 93 S.Ct. 2215, 37 L.Ed.2d 121 (1973). However, Harmon does not attempt to assert that the United States is liable for anything that any contractor did. Instead, Harmon has alleged that Navy personnel—employees of the United States—were negligent in their control of the refueling operations at the air station. The FTCA expressly waives the sovereign immunity of the United States for such tortious acts, *see* 28 U.S.C. § 1346(b), and the fact that Harmon is an employee of a contractor is irrelevant.

The Court thus finds that the United States also owed a duty to Harmon as an employee of a contractor under § 414, and therefore summary judgment must be denied on this basis as well.

## CONCLUSION

For the foregoing reasons, Defendant United States' motion for summary judgment is denied.