WESLEY FOURDYCE, Plaintiff-Appellant, *v.* BAY VIEW FISH COMPANY, INC., *et al.*, Defendants-Appellees.

Third District No. 82—115

Opinion filed December 20, 1982.

John Malvik and Dennis A. DePorter, of Braud, Warner, Neppl & Westensee, Ltd., of Rock Island, for appellant.

Dwight L. Shoemaker, of Conway & Shoemaker, of Aledo, for appellees.

PRESIDING JUSTICE BARRY delivered the opinion of the court:

Plaintiff, Wesley Fourdyce, appeals from an order of the circuit court of Mercer County granting defendants' motion for summary

judgment. Plaintiff's complaint was filed on June 11, 1980, and alleged in two counts that he was injured individually and in a derivative capacity as a result of certain fraudulent and *ultra vires* acts of the defendants. The complaint recites that plaintiff was a holder of 50 shares of stock in Bay View Fish Co., Inc., since 1961; and that on November 15, 1962, without plaintiff's knowledge or consent, his holdings were fraudulently transferred to Alice Fourdyce, plaintiff's mother, who died in 1974.

Several further allegedly *"ultra vires"* acts are alleged to have occurred between November of 1962 and December of 1976, all of which allegedly took place either without notice to plaintiff or to plaintiff's exclusion. In response to the complaint, defendants filed a motion for summary judgment pursuant to section 57 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 57) alleging, essentially, that plaintiff's causes of action are time barred and that, in any event, plaintiff lacked standing to pursue his suit because while he admittedly had been a subscriber to 50 shares, plaintiff had failed to exercise his subscription rights and was not, therefore, a shareholder of record. Affidavits were filed by the individual defendants, Joseph and Donna Fourdyce, in support of their motion for summary judgment and by plaintiff, Wesley Fourdyce, in support of his response to the motion. Plaintiff's response contained allegations, *inter alia,* reasserting ownership of the 50 shares in question and stating that he had first learned of the allegedly fraudulent transfer of his shares in 1977, upon the reading of his father's will; and that the defendants had fraudulently concealed written evidence of that transfer from plaintiff from 1962 until his discovery in 1977.

On January 28, 1982, after considering affidavits and exhibits as well as arguments of counsel in support of their positions, the trial court entered judgment granting the defendant's motion and setting forth its findings on the issues presented by the parties. Specifically the court made the following findings of fact and law, respectively, which are at issue in this appeal:

"9. The Plaintiff, WESLEY FOURDYCE, has never been a Shareholder of record. No Stock Certificate(s) has ever been issued to the Plaintiff. The Plaintiff has never exercised his subscription rights. The Plaintiff in his complaint alleges a status of shareholder but does not claim that he has ever been a shareholder of record. (See Shareholder Record Book and Corporate Minute Book for the Defendant Corporation, BAY VIEW FISH CO., INC., maintained from May 12, 1961, through date of filing this suit as well as Affidavits establishing

that Plaintiff, WESLEY FOURDYCE, has never been a shareholder of record of the Defendant Corporation.)

\* \* \*

3. [S]ince the Plaintiff, WESLEY FOURDYCE, knew of his subscription rights to the fifty (50) shares of stock in question as of May 12, 1961, the five (5) year Statute of Limitations on fraud as found in Section 73 [*sic*], Chapter 83, Illinois Revised Statutes, would bar any such fraudulent claim.

4. To the extent that either count is a shareholder's derivative suit, such action by the Plaintiff is barred since Plaintiff has never been a *shareholder of record* as required pursuant to the provisions of Section 157.45(a), Chapter 32, Illinois Revised Statutes. A Plaintiff must comply with this statutory provision since a shareholder's derivative suit is an action created by statute and is not a common law action.

5. The Plaintiff's attempt in this suit to exercise his subscription rights to the fifty (50) shares in question, if based on an oral contract, would be barred by the five (5) year Statute of Limitations for such contract as found in Section 16, Chapter 83, Illinois Revised Statutes, and if based on a written contract, would be barred by the ten (10) year Statute of Limitations as found in Section 17, Chapter 83, Illinois Revised Statutes."

■ Plaintiff's appeal challenges the trial court's conclusion that there are no genuine issues of material facts based on the pleadings and affidavits of record. It is plaintiff's position that summary judgment should not have been granted because there remains a genuine issue as to whether plaintiff was a shareholder of record entitled to maintain his causes of action against these defendants.

While, as a general rule, a court of review accords great deference to the determinations of a trial court, in considering an order of summary judgment, we are called upon to balance against this general proposition a strong policy of fairness permitting litigants who, in good faith, seek to resolve their differences in a court of law to have access to our courts. This countervailing policy, then, requires that we reexamine and scrutinize the pleadings, affidavits and exhibits presented to the trial court, strictly construing them against the party moving for summary judgment and liberally in favor of the nonmoving party so as to leave no doubt but that the summary judgment was proper. (*Shockley v. Ryder Truck Rental, Inc.* (1979), 74 Ill. App. 3d 89, 392 N.E.2d 675.) Having done so in the instant case, we conclude that summary judgment should not have been granted. We will con-

sider initially the question of standing to sue.

The defendants make much of the fact that the Business Corporation Act requires plaintiff be a shareholder to bring a derivative action (Ill. Rev. Stat. 1979, ch. 32, par. 157.45(a)). The Act defines "shareholder" as a "holder *of record* of shares in a corporation." (Emphasis added.) (Ill. Rev. Stat. 1979, ch. 32, par. 157.2—7.) And, defendants argue, since the plaintiff, who as the first corporate secretary was charged with the duty to maintain records and countersign certificates, never possessed a certificate, he is not a holder *of record* and he is not entitled to maintain his causes of action. We are not convinced by this argument. Firstly, it is clear to us that a certificate of stock is merely *evidence* of the fact that the holder thereof is a holder of record. Ill. Rev. Stat. 1979, ch. 32, par. 157.2—8; *Connelly v. Estate of Dooley* (1981), 96 Ill. App. 3d 1077, 1082, 422 N.E.2d 143, 147.

Secondly, although plaintiff was secretary and certainly had authority to participate in the issuance of stock certificates, the fact that the plaintiff did not possess a certificate for the 50 shares he claims is not conclusive since the record discloses that no corporate certificates were prepared before 1972, and by that time, Alice Fourdyce was acting as secretary—not the defendant. Plaintiff directs our attention to an entry in the minute book memorializing a meeting of November 15, 1962, which states that "Wesley Fourdyce *** relinquished all holdings of the corporation including all shares ***. [A]lso Alice P. Fourdyce had the 50 shares transferred from Wesley to hers [*sic*]." In his complaint, plaintiff alleges that the November 15, 1962, meeting was held, as aforesaid, without plaintiff's knowledge or consent and in derogation of the corporation bylaws which require notice to shareholders. Plaintiff points out, however, that the language of the November 15 minutes constitute an admission that he was a shareholder prior to the allegedly fraudulent "transfer."

Plaintiff further asserts in his affidavit that the corporate records do not represent what, in fact, took place with respect to the issuance of shares to him. Plaintiff also alleges that various acts of labor and services were performed by him in consideration for his shares, and that he did exercise his subscription rights to 50 shares. If plaintiff's allegations can be proved, then, regardless of the fact that he has never possessed a certificate, plaintiff contends, he would meet the shareholder status requirement for maintaining his derivative suit.

The record supports plaintiff's argument. The corporate records disclose that plaintiff obtained subscription rights to 50 shares in May of 1961, at the first meeting of shareholders. The minutes of that

meeting also variously refer to plaintiff as a director, shareholder and secretary of the corporation. Bylaws adopted on that occasion contain provisions that "directors must be stockholders of this corporation" and "only directors *** shall be eligible to be General Officers of said corporation." Included among the general officers enumerated in the bylaws is the secretary.

A rebuttable presumption of shareholder status arises when a person votes shares at a shareholder meeting and when a person is elected as a director or officer of a corporation whose bylaws require the holders of such positions to be shareholders. (18 C.J.S. *Corporations* sec. 476 (1939).) In the present case, we believe that the corporate records give rise to such a presumption on both bases. The defendants presented evidence rebutting the presumption and it is not insubstantial. However, we do not find it so overwhelming as to entitle them to summary judgment. Accordingly, we hold that the above-recited facts and allegations are sufficient to render the issue of the plaintiff's status as a shareholder or mere holder of subscription rights a material factual dispute.

The defendants also argue that even if an issue exists as to plaintiff's standing to sue, they are still entitled to summary judgment because, under any applicable statute of limitations, the 20-year-old causes of action would be time-barred. Although the trial court found, as a matter of law, that the plaintiff's suit is time-barred, we cannot agree.

The plaintiff, although failing to set forth allegations of fraudulent concealment in his complaint, has generally alleged such in his affidavit. The defendants urge that we apply the procedural rule that failure to make specific allegations of fraudulent concealment in a complaint such as this, wherein plaintiff seeks to estop defendants from defending based on the statute of limitations, is fatal to plaintiff's causes of action (*McDaniel v. La Salle Ambulance Service, Inc.* (1982), 108 Ill. App. 3d 1042, 440 N.E.2d 158). However, as plaintiff correctly asserts, this rule does not obtain in the procedural context of the instant case inasmuch as the defendants herein sought summary judgment only and they have not attacked plaintiff's complaint for the sufficiency of its allegations (see Ill. Rev. Stat. 1979, ch. 110, par. 48).

Defendants rely on *Chicago Park District v. Kenroy, Inc.* (1978), 58 Ill. App. 3d 879, 374 N.E.2d 670, and *Auster v. Keck* (1976), 63 Ill. 2d 485, 349 N.E.2d 20, in arguing that the trial court was correct in concluding that they were entitled to summary judgment on the basis of their statute of limitations defense. However, because both cases

were concerned with the sufficiency of allegations in the pleadings on motions to dismiss, they are not dispositive of the limited issue before us.

It is apparent to us that the trial court erred in giving undue weight to the plaintiff's knowledge of his subscription rights in 1961 and in focusing upon his finding that the plaintiff had not exercised those rights. As indicated above, the question of whether or not the plaintiff in fact exercised his subscription rights, thereby rendering him an owner of shares at the time of the alleged transfer, remains at issue, and we so find.

■ We have carefully reviewed the record before us under the strict standard applicable to summary judgments, and we cannot state conclusively when plaintiff had knowledge of facts underlying his cause of action for the fraudulent transfer or conversion of shares allegedly owned by him as a result of his exercise of subscription rights. Nor can we conclude at this juncture that the plaintiff will necessarily be unable to plead and prove facts sufficient to estop defendants from asserting their statute-of-limitations defense. Ill. Rev. Stat. 1979, ch. 83, par. 23.

Accordingly, we hold that plaintiff's complaint and affidavit, when read together, sufficiently raise a genuine issue of material fact as to whether the defendants fraudulently concealed plaintiff's cause of actions between 1963 and his discovery of it in 1977 to resist a motion for summary judgment.

For the reasons stated, the judgment of the trial court is reversed and this cause is remanded for further proceedings.

Reversed and remanded.

ALLOY and SCOTT, JJ., concur.