EVA RUFF, Indiv. and as Special Adm'r of the Estate of Sheldon Ruff, Deceased, Plaintiff-Appellant, v. NORTHWESTERN MEMORIAL HOSPITAL, Defendant-Appellee.

First District (2nd Division)   No. 85—2993

Opinion filed July 21, 1987.—Rehearing denied September 29, 1987.

Asher, Pavalon, Gittler & Greenfield, Ltd., of Chicago (Geoffrey L. Gifford, of counsel), for appellant.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (E. Michael Kelly, Stephen R. Swofford, Maxwell Griffin, and H. Anne McKee, of counsel), for appellee.

PRESIDING JUSTICE SCARIANO delivered the opinion of the court:

Plaintiff-appellant Eva Ruff filed a complaint charging Dr. Charles Nadler, Dr. George Blumenschein and Northwestern Memorial Hospital[1], with negligence arising from the treatment and subsequent death of her husband, Sheldon Ruff, who had been suffering from Hodgkin's disease. After the plaintiff's filing of two amended complaints, the circuit court granted summary judgment in favor of defendant-appellee Northwestern Memorial Hospital, and when plaintiff's motion for a rehearing seeking to vacate the summary judgment order and to file a third amended complaint was denied, this appeal was taken. We vacate the order.

---

[1]To preserve the distinction between Northwestern Memorial Hospital, the appellee herein, and Northwestern University Medical School, the former is hereinafter referred to as "the hospital" and the latter is referred to as "the university."

Sheldon Ruff was one of the two original plaintiffs in this action. He was diagnosed as suffering from Hodgkin's disease in October 1970 and passed away on July 28, 1981. Prior to his death, on March 15, 1981, he and his wife filed their original malpractice complaint, naming Dr. Nadler and the hospital as defendants. Decedent had been treated initially by Dr. Begg, Nadler's partner; he became Nadler's patient following radiation treatment. Nadler had a private general practice in internal medicine, was a faculty member at the university, and rented space at the hospital, where he treated decedent from 1972 through early 1981. The complaint was largely predicated on the propriety of the administration of "MOPP" chemotherapy[2] at the hospital under Nadler's supervision.

On September 9, 1981, following Mr. Ruff's demise, Eva, as special administrator of his estate, filed an amended complaint reflecting his death. In four counts, the complaint charged causes of action for survival (count I), wrongful death (count II), loss of society (count III), and family expense (count IV). The allegations therein pertained to Dr. Nadler and the hospital through Nadler, its purported agent, and through its other agents and servants. A second amended complaint was filed on December 11, 1981, adding Dr. Blumenschein as a defendant in a new count and in revised versions of the original counts. The new count (count II), a survival action, was directed against Blumenschein.

The chronology of events giving rise to this litigation is as follows. After decedent was diagnosed as suffering from Hodgkin's disease, either Nadler or Begg approached Blumenschein regarding the appropriate treatment for Mr. Ruff. Nadler, although familiar with MOPP therapy in 1971, consulted with Blumenschein because of the latter's superior knowledge of the regimen associated with that therapy. At that time, Blumenschein was an attending physician at the hospital and worked in the hematology section of the university, with a focus on oncology. Blumenschein was an assistant professor and was paid a salary by the university; the hospital did not pay a salary to its attending physicians. Although he had an office at the university, Blumenschein did not see or treat patients there; rather, he had access to offices at the hospital, as did all physicians with staff privileges. The hospital provided medical supplies and equipment, and nursing staff was available to all physicians. After Blumenschein was consulted, de-

---

[2] "MOPP" chemotherapy is the measured administration of nitrogen mustard (M), oncovin (O), prednisone (P), and procarbozine (P) in treatment of Hodgkin's disease.

cedent's condition was "restaged" from a "class IIA" to a "class IVB" Hodgkin's disease; the decision to institute MOPP therapy was made in November 1971.

According to Nadler's deposition, Blumenschein "called the shots" on the MOPP therapy, although it was Dr. Nadler who actually administered the regimen to decedent. This treatment was suspended from January 13, 1972, until February 28, 1972, when Mr. Ruff was hospitalized with a viral infection. He was placed on a "maintenance MOPP" regimen again in August 1972, but it was once more interrupted on December 11, 1972, when he was admitted to the hospital with meningitis. After seeing decedent on January 4, 1973, at which time he complained of pain in his right hip, Nadler reinstituted MOPP therapy on Dr. Blumenschein's instructions.

Blumenschein departed the hospital in January 1973. Mr. Ruff was rehospitalized from July through August 1973, when he was afflicted with herpes zoster. Nadler consulted with Dr. Blumenschein, Dr. Kwann (who worked at a V.A. hospital affiliated with the university and where he was chief of hematology; Kwann was also a faculty member of the university) and Dr. DeWys, who succeeded Blumenschein as the university's oncologist. Both Kwann and DeWys concurred in Blumenschein's judgment to continue MOPP maintenance therapy, although they recommended a smaller dosage to reduce the toxicity of the treatment. DeWys also recommended a shift to adriamycin as an alternative to MOPP therapy.

On December 3, 1973, Mr. Ruff was diagnosed as having aseptic necrosis, and on February 3, 1974, he was admitted to the hospital for hip replacement surgery. Nadler consulted with Blumenschein following that hospitalization, at which time Blumenschein recommended continued MOPP therapy. From March 1974 through February 1978, decedent was on a regimen of intermittent MOP therapy (MOPP without prednisone). That treatment was discontinued in 1978 after Nadler spoke to Dr. Grumet, who succeeded DeWys at the university.

In 1980, decedent was referred to a facility in Houston, Texas, for further treatment. While there, he was diagnosed as having a malignant tumor, and a hemipelvectomy (removal of half the pelvis and a leg) was performed in Chicago in March 1981. As noted earlier, decedent passed away on July 28, 1981.

On March 15, 1983, Blumenschein moved to be dismissed from the case based on the statute of limitations, for the reason that the last discussion he had regarding the case occurred in 1976. Blumenschein was dismissed with prejudice on January 24, 1984, and pursuant to a settlement and stipulation, Nadler was dismissed with prejudice on

October 23, 1984.

Dr. Jack Sternberg, a board-certified general internist and oncologist who trained at the Houston facility from 1975 through 1977, was plaintiff's expert. He took decedent's medical history and examined him in February 1981. In his deposition, Sternberg expressed concern over the duration of Mr. Ruff's MOPP therapy, stating that most people receive that treatment for only six to eight months, and never for more than two years. His concern was actuated by the nature of that therapy, which is both immunosuppressive and potentially carcinogenic. Sternberg opined that because of these side effects, the risk of secondary cancers increases. Accordingly, his opinion continued, if the physicians were not convinced that Mr. Ruff was cured, they should have discontinued the therapy in 1973 or 1974.

In his deposition, Blumenschein stated that he was a nonteaching assistant professor at the university and an attending physician at the hospital. He had a lab at the university, but no private practice. He was provided with an office at the university and had access to an office, support staff and supplies at the hospital. He saw patients at the hospital on a consulting basis in order to garner cash to fund his research.

Sternberg offered his opinion as to the performance of the various participants in Mr. Ruff's treatment. He asserted that Blumenschein improperly diagnosed decedent as having recurring Hodgkin's without a sufficient factual basis for that judgment; assuming a proper diagnosis, he faulted Blumenschein's usage of MOPP therapy for a prolonged period of time and Blumenschein's failure to look to newer drug therapies when indicated. Sternberg found that Nadler was not at fault, since he merely carried out Blumenschein's instructions and applied the therapy properly. Excluding Blumenschein and his successors, Sternberg found no deficiencies in the performance of any support personnel at the hospital (*i.e.*, nurses, residents, interns, and technicians, etc.).

On April 10, 1985, the hospital moved for summary judgment on plaintiffs' second amended complaint, asserting that (a) Nadler and Blumenschein were both independent practitioners; (b) that Sternberg's deposition supported its contention that the hospital was not otherwise at fault; and (c) its expert, Dr. Canellos, wholly exonerated the hospital from culpability. In support of its motion, the hospital submitted the affidavit of its counsel, stating that both doctors were independent practitioners. Plaintiff filed a response supported by excerpts from the various depositions taken, and the hospital replied in kind. A hearing was held on those matters on June 12, 1985.

In ruling on the summary judgment motion, the court initially dispensed with the affidavit of counsel for the hospital, noting that it stated a legal conclusion which was not binding on the court. The court concluded, however, that as to Nadler, the evidence showed that he was an independent practitioner and not an agent of the hospital. As to the balance of count I, the court noted that it alleged liability on the part of the hospital for the actions of its agents and servants; since Sternberg and Canellos agreed that these additional or support personnel did not deviate from the appropriate standard of care, the hospital was entitled to summary judgment. As to the remaining counts, the court noted that the complaint failed to include any allegation of Blumenschein's agency, and stated that the hospital accordingly could not be held liable on a theory of imputed liability. The court then granted summary judgment on the remaining counts.

Plaintiff filed a motion for rehearing, seeking to vacate the summary judgment order and to file a third amended complaint. In essence, plaintiff charged that there were still issues of material fact unresolved precluding summary judgment, regarding both the hospital's vicarious liability for Blumenschein's actions, for the actions of DeWys and Kwann, and its direct liability for supervision of members of its medical staff and its facilities. The court reaffirmed its decision and denied rehearing. Since it concluded that summary judgment was validly entered, the court felt that it was without authority to entertain the motion for leave to file the third amended complaint. Plaintiff then perfected this appeal.

OPINION

In plaintiff's second amended complaint she pursued three named defendants: Drs. Nadler and Blumenschein, and the hospital. When the court ruled on the summary judgment motion at issue herein, the only defendant remaining in the litigation was the hospital. Nadler and Blumenschein had both been dismissed with prejudice, the former upon settlement and stipulation, the latter after the court found the suit time barred. The court's grant of relief to the hospital reflected its judgment on the sufficiency of the allegations of the second amended complaint pertaining to the theories of liability pursued against the hospital.

The contentions advanced by the appellant in this court are (1) that the trial court improperly entered summary judgment for the hospital based solely upon the allegations of her second complaint, and (2) that in any event, the trial court improperly denied her motion to vacate the summary judgment awarded to the hospital and for

leave to file a third amended complaint. In enlarging upon these grounds, appellant argues (1) that the pleadings and depositions gave rise to genuine issues of material fact concerning both the hospital's independent and vicarious liability, citing, among other authorities *Holton v. Resurrection Hospital* (1980), 88 Ill. App. 3d 655, 410 N.E.2d 969; *Darling v. Charleston Community Hospital* (1965), 33 Ill. 2d 326, 211 N.E.2d 253, *cert. denied* (1966), 383 U.S. 946, 16 L. Ed. 2d 209, 86 S. Ct. 1204; *Frey v. Belleville News-Democrat, Inc.* (1978), 64 Ill. App. 3d 495, 381 N.E.2d 705; and *Fourdyce v. Bay View Fish Co.* (1982), 111 Ill. App. 3d 76, 443 N.E.2d 790; and (2) that her motion to file a third amended complaint was proper and should have been allowed under sections 2—616(a) and (c) and section 2—1203(a) of the Illinois Code of Civil Procedure (Code) (Ill. Rev. Stat. 1985, ch. 110, pars. 2—616(a), (c), 2—1203(a)); that factually, the hospital's negligent supervision and imputed liability were issues in the case, and that, legally, the amendment of the complaint would not have created surprise or prejudice, citing, among other cases, *Frey.*

Both parties argue extensively as to whether or not the following presented genuine issues of material fact and thus either precluded or merited granting of the hospital's motion for summary judgment: (1) was Blumenschein an agent of the hospital and as such comprehended within that part of the complaint charging a cause of action against Dr. Nadler and the hospital through Nadler, and through "its other agents and employees"; (2) is the hospital vicariously liable for the acts of Doctors DeWys and Kwann; and (3) is the hospital independently liable for failure to use reasonable care to discern the qualifications of persons who perform medical services in the hospital and to review treatment by such persons? Vigorously contested in this connection is the question of whether or not allegedly insufficient pleadings may have such omissions cured or supplied by allegations furnished in any of the affidavits, depositions, or admissions which are presented in support of or in opposition to the motion for summary judgment or which may otherwise be on file. *Frey v. Belleville News-Democrat, Inc.* (1978), 64 Ill. App. 3d 495, 381 N.E.2d 705; *Fourdyce v. Bay View Fish Co.* (1982), 111 Ill. App. 3d 76, 443 N.E.2d 790.

In view of the disposition we make of this appeal, and because it would materially advance the progress of this litigation, we deem it unnecessary to address those aspects of the case treating with the issue of the propriety of the trial court's granting of summary judgment herein. Instead, we assume, without deciding, that summary judgment was properly granted. Because it considered itself without authority to vacate the entry of its summary judgment order, citing

*People ex rel. Endicott v. Huddleston* (1975), 34 Ill. App. 3d 799, 340 N.E.2d 662, the trial court denied appellant's motion for leave to file her third amended complaint, which would now have clearly and unmistakably alleged the hospital's independent liability and the facts of the agency relationship existing between the hospital and Dr. Blumenschein (charges relating to the hospital's liability for the alleged negligence of Doctors DeWys and Kwann seem to have been omitted in appellant's proposed amended complaint). The court should have granted appellant's motion to amend.

The motion for summary judgment in the hospital's favor was allowed on June 12, 1985. Plaintiff's motion to vacate was filed within 30 days thereafter, on July 11, 1985. That motion proceeded under sections 2—1203, 2—1005, and 2—616 of the Code. (Ill. Rev. Stat. 1985, ch. 110, pars. 2—1203, 2—1005, 2—616.) Attached thereto was plaintiff's proposed amended complaint, which now pleaded the hospital's direct liability and also its vicarious liability by having committed certain acts by and through its agent and servant, Dr. George Blumenschein. Here, the circuit court was faced with a proposed amendment which reflected certain evidence it had already considered in conjunction with the motion for summary judgment. For purposes of the motion, that evidence can be fairly read to support the proposed allegations, namely, that the hospital was guilty of negligent supervision and that Dr. Blumenschein acted as an agent and servant of the hospital in his conduct during the course of his attendance of plaintiff's decedent. To the extent that the circuit court may have considered the record devoid of such evidence, it was in error. As previously indicated, we assume for our purposes, without deciding, that to the extent that the circuit court considered that negligent supervision and vicarious liability of the hospital for the conduct of Dr. Blumenschein were not properly pleaded *in the second amended complaint*, it was correct. It is precisely for this reason that amendments to conform pleadings to proof are authorized in section 2—616(c) of the Code.

The fact that the motion under consideration was for summary judgment under section 2—1005 of the Code does not alter the right to amend under section 2—616. Indeed, the supplement to the historical and practice notes to Smith-Hurd Annotated Statutes (Ill. Ann. Stat., ch. 110, par. 2—1005, Historical and Practice Notes, at 21 (1987 Supp.)) makes the observation that with respect to newly added subsection 2—1005(g): "The second change in this section *reaffirms* the power of the court to permit amendments to pleadings at any time, as mandated by section 2—616(a) of the Civil Practice Law, notwithstanding a party's invocation of the summary judgment procedure and

818

*notwithstanding the success of that invocation."* (Emphasis added.) Section 1—106 of the Code of Civil Procedure requires that the provisions of the Code be liberally construed, to the end that controversies be determined according to the substantive rights of the parties. Ill. Rev. Stat. 1985, ch. 110, par. 2—106.

Accordingly, the motion to vacate and for leave to file the proposed third amended complaint should have been allowed and the hospital's motion for summary judgment thereafter denied.

For the above stated reasons, the order of the circuit court of Cook County granting the hospital summary judgment is vacated, and the cause is remanded for further proceedings consistent with this opinion.

Order vacated and cause remanded.

STAMOS and HARTMAN, JJ., concur.